STANLEY *et al.*, *Appellants*, v. THE UNION DEPOT RAIL-ROAD COMPANY *et al.*; THE CITY OF ST. LOUIS *et al.*, *Appellants.*

### Division Two, March 14, 1893.

1. Negligence: CROSSING STREET: STREET RAILWAY. Ordinary care is required of a street railroad company towards one crossing a street in front of its car.

2. ———: ORDINARY CARE. Ordinary care is that care which persons of ordinary prudence would exercise in the same situation and under like circumstances.

3. ———: JOINT TORT FEASORS. While joint tort feasors are severally liable for the injuries inflicted, yet to hold them jointly liable they either must have acted in concert or the act of one must have been of such a character as to have naturally resulted in causing the act of the other.

4. ———: REMOTE CAUSE. Where the act of negligence complained of as causing the injury is at most but the remote cause, there can be no recovery therefor.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED.

*T. J. Rowe* for appellant Heman Construction Company.

(1) The petition fails to state facts sufficient to constitute a cause of action against Heman Construction Company, and the proof made did not make a *prima facie* case against the Heman Construction Company. *Hudson v. Railroad*, 14 S. W. Rep. 20; 1 Shearman & Redfield on Negligence, secs. 25, 26 and 96. (2) The court did not properly instruct the jury on the measure of damages, and instruction number 1 given by the

court is erroneous. (3) Instruction number 2 given by the court is erroneous, improper and misleading. (4) Instructions numbers 1, 2 and 3, offered by Heman Construction Company, correctly state the law, and should have been given. (5) The instruction on contributory negligence, given at the instance of plaintiff, should not have been given without a definition of the legal meaning of "contributory negligence."

*W. C. Marshall* for appellant, City of St. Louis.

(1) There is no evidence to support a verdict against the city of St. Louis. A street car driver is not bound to regulate his speed at such a rate as may be necessary to avoid harm to persons crossing the road in an unreasonable and improper manner. *Meyer v. Railroad*, 6 Mo. App. 27. (2) At the point of the accident there was no street crossing, nor could it have been anticipated that any person would attempt at that point to cross the street. Hence the driver of the car was not obliged to guard specially against such unexpected occurrence. *Bell v. Railroad*, 86 Mo. 599; *Scoville v. Railroad*, 81 Mo. 437. (3) The court erred in giving erroneous and misleading instructions asked by plaintiffs. (4) The instructions given are inconsistent.

*G. A. Finkelnburg* for respondent, The Union Depot Railroad Company.

(1) The instructions given fairly and properly declared the law of negligence so far as this respondent was concerned. Hence the judgment rendered in its favor should not be disturbed irrespective of the merits of the instruction refused which was on the same subject. The refusal of instructions is not a ground for reversal where those given correctly state the law and

fairly present the case. *Hamby v. Brasher*, 51 Mo. 459; *Porter v. Harrison*, 52 Mo. 524; *Meyers v. Railroad*, 59 Mo. 223. The supreme court will not reverse for refusal of instructions unless it appears that error has been committed materially affecting the merits of the action. *Orth v. Dorschlein*, 32 Mo. 366. (2) The instruction here in question was properly refused because: *First.* It undertakes to lay down a measure of care and diligence which is vague and uncertain and which is unknown to the law of negligence. *Second.* It is argumentative and contains a comment on parts of the testimony. *Third.* It is misleading in character. (3) The measure of care which a railway company owes to persons crossing the tracks is ordinary care as distinguished from that which it owes to passengers, which is extraordinary. 2 Shearman & Redfield on Negligence, sec. 457; *Frick v. Railroad*, 75 Mo. 595; *Dunkman v. Railroad*, 95 Mo. 232; *Guenther v. Railroad*, 95 Mo. 286; *Wilkins v. Railroad*, 101 Mo. 93. Ordinary care must be understood with reference to the circumstances of each case and the court explained this to the jury. (4) It is not the province of the court to select certain facts shown by the evidence, and tell the jury how much and what weight they shall give to such facts, much less to direct a verdict on such facts. *Leeser v. Boeckhoff*, 33 Mo. App. 223, and supreme court cases there cited. (5) This accident was the direct result of the deceased's carelessness. The boy, who was between seven and eight years of age, did not exercise care in proportion to his capacity. Where the negligence of an injured party concurs with any negligence of the defendant, plaintiff cannot recover. *Craig v. Sedalia*, 63 Mo. 417; *Dunkman v. Railroad*, 16 Mo. App. 548; *Barton v. Railroad*, 52 Mo. 253. (6) Where the plaintiff is guilty of contributory negligence, the defendant will be liable only for such negligence on his part as

concurred after he became aware of plaintiff's unsafe condition. *Rains v. Railroad*, 71 Mo. 164; *Zimmerman v. Railroad*, 75 Mo. 476; *Sweigert v. Railroad*, 75 Mo. 475; *Yarnell v. Railroad*, 75 Mo. 575. The plaintiff cannot recover where the causes which produced the injury are attributable to himself. *Leduke v. Railroad*, 4 Mo. App. 485.

*Charles B. Stark* and *W. F. McIntire* for respondents, Edmund B. Stanley *et al.*

(1) Where there is no plea of contributory negligence, it is proper to instruct the jury that the defendant is not entitled to claim a verdict on the ground of contributory negligence. *Hudson v. Railroad*, 101 Mo. 13. (2) The words "contributory" and "contributing" used in an instruction are plain English words and do not need to be explained. *Hudson v. Railroad*, 101 Mo. 13; *Dickson v. Railroad*, 104 Mo. 491; 2 Thompson on Trials, sec. 1721 (forms given); *Cooper v. Johnson*, 81 Mo. 483; *Larimore v. Legg*, 23 Mo. App. 645; *Berry v. Wilson*, 64 Mo. 164; *Davis v. Railroad*, 13 Mo. App. 449; *Owens v. Pierce*, 5 Mo. App. 576; *Young v. Crawford*, 23 Mo. App. 432. (3) It is proper to instruct the jury that, in estimating the damages to the plaintiffs for the negligence of the defendants causing the death of the plaintiffs' child, they should take into account the position in life of the plaintiffs, the occupation of the father, the age and sex of the child, together with all the other facts and circumstances in evidence, and form their estimate of the damages with reference to the pecuniary injury to the plaintiffs; and that it is proper for the jury to exercise their own judgment upon the facts in evidence by connecting them with their own knowledge and experience. *Nagel v. Railroad*, 75 Mo. 653; *Ihl v. Railroad*, 47 N. Y.

317; *Chicago v. Major*, 18 Ill. 349; *Grogan v. Foundry Co.*, 87 Mo. 321; *City of Kansas v. Butterfield*, 89 Mo. 646. (4) All dangerous pits or excavations in a highway are nuisances, and the court, therefore, properly refused, at the request of the Heman Construction Company, to instruct the jury that said company had not created and maintained a nuisance. Wood on Nuisances, sec. 274, p. 288; *Matthews v. Railraod*, 26 Mo. App. 75; *Davis v. Hill*, 41 N. H. 329; *Columbus v. Jacques*, 30 Ga. 506; *Jones v. Waltham*, 4 Cush. 299; *State v. Atkinson*, 24 Vt. 448; *Fisher v. Thirkell*, 21 Mich. 1. (5) The city of St. Louis is bound to keep its streets free from obstructions and reasonably safe for travel in the usual modes; it is liable for injuries caused by its neglect so to do, and it cannot evade, suspend or shift to another the duty so to do. *Welsh v. St. Louis*, 73 Mo. 71; *Russell v. Columbia*, 74 Mo. 480; *Stephens v. Macon*, 83 Mo. 345; *Haniford v. Kansas City*, 103 Mo. 172. (6) The innocent or culpable act of a third person may be the immediate cause of the injury, and still an earlier wrongful act may have so effectually contributed to it as to be regarded as the efficient or at least concurrent and responsible cause. *Morrison v. Railroad*, 27 Mo. App. 418; Sutherland on Damages, p. 64; *Nagel v. Railroad*, 75 Mo. 653; *Lane v. Atlantic Works*, 111 Mass. 136; *Boggs v. Railroad*, 18 Mo. App. 274, 278; *Miller v. Railroad*, 90 Mo. 389, 393-4; *Weber v. Railroad*, 100 Mo. 194; *Evans v. Railroad*, 11 Mo. App. 463; *Forney v. Geldmacher*, 75 Mo. 113. (7) If the appellants desired to defend on the ground that a new and efficient cause intervened between their negligent acts and the injury, it was incumbent on them to plead it as an affirmative defense. *Yocum v. Town of Trenton*, 20 Mo. App. 489; *Lockhart v. Lichenthaler*, 46 Pa. St. 158; *Bridge v. Railroad*, 3 M. & W. 247.

*Charles B. Stark* and *W. F. McEntire* for Edmund B. Stanley *et al.*, appellants.

The degree of care to be exercised must be proportioned to the danger to be apprehended of inflicting injury on others. *Frick v. Railroad*, 75 Mo. 595; *Bowen v. Railroad*, 95 Mo. 268; *Stephens v. Railroad*, 86 Mo. 221; *Dougherty v. Railroad*, 81 Mo. 325; *Karl v. Railroad*, 55 Mo. 476; *Brown v. Railroad*, 50 Mo. 461; *The Nitro-Glycerine Case*, 82 U. S. 524; *Puckwell v. Wilson*, 5 C. & P. 375; Whittaker's Smith on Negligence, 217–8; Wharton on Negligence [2 Ed.] sec. 53, p. 37.

GANTT, P. J.—This is an action of E. B. Stanley and wife for damages for killing their minor son, Edward W. Stanley, on June 25, 1890.

The petition alleges that plaintiffs are husband and wife; that Edward W. was the minor son, about seven years old; that each of the defendants are corporations organized under the laws of this state, the city of St. Louis being a municipal corporation, and the Union Depot Railroad Company and the Heman Construction Company business corporations; that Twelfth street was, prior to the twenty-fifth of June, 1890, one of the public highways of the city of St. Louis; that on and prior to said date the Union Depot Railroad Company owned and operated a street railroad along Twelfth street between Spruce street and the Twelfth street bridge, drawn by horses; that prior to said date the Heman Construction Company, with the knowledge of the other defendants, dug a deep ditch in said Twelfth street between Spruce street and the bridge, and negligently, carelessly and unskillfully piled the granite paving which it dug up out of said street in a large pile and wall many (to-wit, five feet)

feet high, parallel with and alongside of said railroad track, and so close as not to afford room for pedestrians to pass along said street between said wall and the passing cars, and negligently made and left open a narrow aperture in said wall with perpendicular sides as high as the wall, and negligently placed across said ditch a foot bridge from the sidewalk to the street and immediately opposite said aperture; that said ditch and wall extended from Spruce street to the bridge, so that persons passing along the west side of Twelfth street were unable to cross said ditch and wall and go on to said bridge in any other way than to cross said foot bridge and through said aperture, and upon and over said railroad track in front of approaching cars; that Twelfth street sloped in both directions (north and south) to a point immediately and directly opposite to and in front of said aperture, and that said railroad company, with full knowledge of all the facts so stated, negligently, carelessly and unskillfully ran and operated its cars over and along said street and track in front of said aperture at a rate of speed so great as to endanger the lives and safety of pedestrians who attempted to pass over said foot bridge between said sidewalk and the roadway of Twelfth street; that such condition of affairs constituted a continuing nuisance and was dangerous to the lives and safety of pedestrians; that on or about the twenty-fifth of June, 1890, the son of plaintiff, who was then seven years of age, while attempting to cross said foot bridge and go from said sidewalk to and upon said Twelfth street, "was, through and by the negligence, carelessness and unskillfulness of the defendant Union Depot Railroad Company, its agents and servants, run upon and knocked down by the horses drawing one of the cars owned and operated by the defendant Union Depot Railroad Company, and was then and there run over by said cars, and thereby

suffered injuries which caused his death on the next day thereafter, to the damage of the plaintiffs in the sum of $5,000.

The city and construction company filed a general denial for answer. The street car company pleaded a general denial and contributory negligence, which last was by the court stricken out.

The evidence developed the following facts: On the fourth of April, 1890, the city of St. Louis passed an ordinance, being 15640, "to establish Thirteenth street sewer from Poplar street to Market street, to provide for the cost thereof, etc." In pursuance of this ordinance, on May 13, 1890, the city of St. Louis made a contract with the Heman Construction Company for constructing Thirteenth street sewer on Twelfth street from Poplar street to Clark avenue in the city of St. Louis, Missouri. By the terms of this contract it was the duty of the Heman Construction Company to so place excavated material as not to interfere with travel on the street or to incommode occupants of adjoining property; and to replace paving in the same manner as when originally constructed. Twelfth street from Poplar street to Clark avenue is a public highway and is paved with granite blocks. Twelfth street runs north and south; Poplar street and Clark avenue run east and west. The northern approach of the bridge on Twelfth street which crosses the railroad tracks commences at a point about fifty feet north of Poplar street. The Union Depot Railroad Company had two tracks on Twelfth street from Clark avenue to the northern approach of Twelfth street bridge, and on the bridge on June 25, 1890, and for a long time prior thereto, was running horse cars on those tracks. The cars going south ran on western track and cars going north on eastern track.

Sometime prior to June 25, 1890, defendant, the Heman Construction Company, began the construction of a sewer under its said contract with the city of St. Louis and commenced on Twelfth and Poplar streets, going north on Twelfth street as the work progressed; and on June 25, 1890, the trench for the sewer was dug about two hundred feet or more north of the north point of the Twelfth street bridge. The granite paving blocks on Twelfth street along the trench were taken up by the Heman Construction Company and piled along the east line of the trench about five feet high, three feet wide, and west of the western rail of street car track. North of the bridge approach the granite was piled northwardly nine feet seven inches in length and two feet two inches wide to an opening, leaving a space eastwardly between the granite wall and the west rail of track of about from four to five feet for pedestrians crossing the bridge to walk upon. There was no obstruction between the western car rail and this pile of granite blocks. On the bridge the distance between the west rail of track and pile of granite blocks was four feet and at the opening it was about six feet. At a point nine feet seven inches from north approach of bridge, defendant, Heman Construction Company, left an opening in the pile of granite seven feet wide and placed three boards across the ditch so that persons coming north on the west side of bridge could cross the trench to the pavement on Twelfth street, and persons going south on the pavement on west side of Twelfth street could cross the trench to get to the bridge. North of this opening the granite blocks were piled along the trench five feet high, three feet wide and about two feet from west rail of track. There was no street crossing at this point, nor was the opening in the granite intended to faciltate or invite crossing of the street at this point, but its purpose seems to have

been simply to afford a continuous way north and south to and from the Twelfth street bridge on the west side of said street. The street cars were drawn by two horses, but at a point near Spruce street a third horse was hitched to all cars going south on the west side of the team, in such a position as to occupy in passing more or less of the space between the west rail and the wall. It was hitched to the car to help the team draw it, after passing the aperture, up the grade going south and leading over the Twelfth street bridge. This condition of things had been nearly the same with the knowledge of the railroad company since a time late in May or early in June.

On June 25th, Eddie, the seven-year old son of these appellants, in going east across the foot bridge into the street was run over by a car drawn by three horses moving south. The evidence as to the speed of the car was conflicting; one witness for the plaintiffs testified the car was going twelve miles an hour. On the part of defendants, two witnesses put it at four miles an hour, one at four to five miles, and one says the horses were moving in a slow trot. No witness for plaintiffs saw the accident. Sahms, who was on the car, says he sat with his face to the rear or north, and did not see the boy until after the car ran over him. On the part of defendants, William Buckrader, a commercial traveller, and so far as the record discloses, wholly disinterested, says he was sitting on the front seat of the car next to the driver, and facing south. He, Edward Yeoho, the driver of the hill or extra horse, and William Robinson, the driver of the car, all testify and agree that the little boy came out of the aperture in the granite wall, and ran or stepped immediately in front of the horses between the out horse and the team. Whether he struck the horse or the horse struck him, neither could say, it was done so quickly, Buckrader

saying, *"it just was an eye sight,"* from the time the boy came out of the opening until he ran into the team and was knocked down. That the drivers immediately applied the brakes, and at once checked the horses, is not open to question. The car was halted inside of its length.

The jury returned a verdict in favor of the street railway company and against the city and construction company for $3,000. The case is here on cross appeals, plaintiffs appealing from the verdict in favor of the street railway company, and the city and construction company from the verdict against them.

I. Considering the appeals separately, that of the plaintiffs presents only one question for determination. They complain of the court's refusal to give in addition to other instructions in their behalf, the following:

"The court instructs you, that, if you believe from the evidence that there was on June 25, 1890, a ditch and a pile of stones in Twelfth street, and that there was a foot bridge across said ditch and an opening in said pile of stones, and that they were so near to the car track owned by the defendant Union Depot Railroad Company as to make the situation especially dangerous to persons crossing said foot bridge, then it became the duty of the defendant Union Depot Railroad Company, and its servants and employees, in running its cars past said place, to exercise an increased care and vigilance corresponding to the increased danger, and, if you believe from the evidence that the defendant Union Depot Railroad Company, its servants or employes, had knowledge of such situation so increasing the danger to persons so using said foot bridge, or had knowledge of such facts as would put a reasonably prudent man on his guard, and if you further believe from the evidence that the said defendant, its servants or employes, failed to exercise such increased care and

vigilance in running its cars at said place, and that because of such failure the son of the plaintiffs was run upon and injured so that he died, or if you believe from the evidence that the son of the plaintiffs would not have been injured if the said defendant, its servants or employes, had exercised the increased care and vigilance corresponding to such increased danger, then, and in either such care, your verdict should be in favor of the plaintiffs and against the said defendant."

· The court had already given at the request of plaintiffs these two instructions:

"1. If the jury believe from the evidence that the boy, Edward W. Stanley, was the son of plaintiffs, and that the servants of defendant, the Union Depot Railroad Company, in charge of the team of horses and car which struck said Edward saw or by the exercise of ordinary care would have seen said Edward in a position likely to receive injury from said team and car in time, by the exercise of ordinary care, to have avoided injuring said Edward, and that said Edward was injured as a direct result of the negligence of defendant's said servants in not seeing said Edward in said position of danger in time to have avoided injuring him by exercise of ordinary diligence, or, as a direct result in not using ordinary diligence, to avoid injuring him after seeing him in said dangerous position, then the jury will find against the defendant, the Union Depot Railroad Company.

"2. The court instructs the jury, that your verdict should be in favor of the plaintiffs and against the Union Depot Railroad·Company, the defendant, if you believe from the evidence that the plaintiffs are the father and mother of deceased, Edward W. Stanley; that the defendant, Union Depot Railroad Company, prior to, and on June 25, 1890, owned a railroad track on and along said Twelfth street, and with the permis-

sion of the city of St. Louis operated its cars along and over said track, and that said Twelfth street was then a public street of the city of St. Louis, and the defendant, Union Depot Railroad Company, at the time and place plaintiffs' said son was injured, negligently run and operated its cars and horses, by which said son was hurt, over and along said railroad track so rapidly as to endanger the safety of persons crossing or coming on said street at the point where said son was hurt, and if the jury further believe from the evidence that on June 25, 1890, Edward W. Stanley, the said son of plaintiffs, while crossing or passing along said street, was, as the direct consequence of running and operating said car and horses so rapidly as aforesaid, run against and knocked down by the said horses drawing said car of defendant, Union Depot Railroad Company, and was run over and hurt by said horses or car and so injured that he died from the effects thereof.''

The instructions given on behalf of the defendant, the Union Depot Railroad Company, defined ordinary care in the fourth as follows:

''4. By the term 'negligence,' as used in these instructions, is meant the want of ordinary care, and by the term 'ordinary care' is meant such care as persons of ordinary prudence and caution would exercise in the same situation and under the same circumstances.''

It will be observed that the plaintiffs do not complain of the instructions given for defendant. If the court, in the instructions given, correctly and fairly defined the law of negligence in so far as it was applicable to the facts of the case, then it was not error to refuse other instructions, whether they embodied correct propositions of law or not.

This of course raises the inquiry what measure of care the street car company owed to the little boy when he was attempting to cross its tracks in front of the car. We think there cannot be any doubt that the rule in this state requires ordinary care in such a case, and that ordinary care under the rule is such care as persons of ordinary prudence would exercise in the same situation and under the same circumstances.

In *Frick v. Railroad*, 75 Mo. 595, this court in discussing the measure of responsibility of a railroad company to travelers and others on its tracks at crossings, and at points between streets, held that greater care is to be exercised by those in charge of the train in a city or a town than in the country, but in defining this care in such cases said: "In any case the *requisite degree of vigilance may be properly designated by the words 'ordinary care,'* that is, such care as would be ordinarily used by prudent persons performing a like service under similar circumstances."

This rule has been steadily maintained in this court since that decision. It is one that enables each jury in each recurring case, to say, after a careful survey of all the facts, whether a party has used that care that an ordinarily prudent person would have used under similar circumstances. It is one that is susceptible of practical application. It furnishes the measure required by the law, and leaves to the triers of the fact the determination of the facts and fixing the liability under that rule. It is sufficiently elastic to meet the most aggravated case, or one containing the slightest negligence. By adhering to it, the trial court avoids the common vice of commenting on the facts and invading the province of the jury. *Wilkins v. Railroad*, 101 Mo. 93; *Guenther v. Railroad*, 95 Mo 286; 2 Shearman & Redfield on Negligence, sec. 457.

The instructions given came fully up to this requirement, and there was no error in refusing the third instruction of plaintiffs. It undertook to lay down a rule of diligence and vigilance which is incapable of legal measurement. It indicated something more than ordinary care, and fell short of that extraordinary care which carriers owe to passengers. We think it an uncalled for innovation in the practice in these cases, and if followed would lead to confusion in the minds of the jury. If it required more than ordinary care, there is no warrant for it in law. If it only required ordinary care, then it was unnecessary, as that had been correctly defined in the other instructions.

This court has more than once condemned the practice of making excerpts from the opinion or argument of the judge in an opinion instructions in a case. The instructions should be so framed as to aid the jury, who are not lawyers, to understand the law of the case, and many expressions that are grasped at a glance by the lawyer would be wholly misleading to the average juror.

As the question of the street railway's liability was fairly submitted to the jury upon competent evidence, we have no right to disturb their verdict, and the judgment as to the Union Depot Railroad Company is affirmed.

II. The right to recover against the city is predicated upon the law that holds it responsible for nuisances in its streets that were known to be such by its proper authorities, or, by the exercise of ordinary care upon their part, could have been known. It is not claimed it had any active agency in the death of the little boy further than giving the Heman Construction Company a contract to build the sewer, and all idea of intentional connivance in creating a dangerous place on its streets is negatived by its ordinance in evidence,

which required the construction company to so place
the excavated material as *not* to interfere with travel on
the street, or incommode occupants of adjoining prop-
erty, and observe all ordinances in relation to obstruct-
ing streets, maintaining signals, and keeping open
passage ways.   So that if liable at all it was for negli-
gence in permitting the construction company to violate
its own ordinances by creating and maintaining a
nuisance.

As its liability depends, then, upon that, it is
essential to know in what respect the Heman company
was negligent.   The charge in the petition is, that,
some three weeks before the death of the little boy,
this construction company by virtue of its contract to
construct the Thirteeth street sewer had made an exca-
vation on the west side of Twelfth street, just north of
the Twelfth street bridge, about two hundred feet
long, five feet deep and eight or ten feet wide; that in
making this excavation, it took up the granite blocks
with which the street was paved, and piled them along
the eastern edge of the excavation between the excava-
tion and the traveled street; that it negligently did
this.   It is further alleged that it negligently left an
open space or aperture in this temporary wall, at a
point about nine feet north of Twelfth street bridge,
and built a bridge connecting this aperture with the
sidewalk along the west side of Twelfth street, "in such
a manner that pedestrians crossing said foot bridge
from the sidewalk to the street were obliged to step out
of and through said aperture immediately upon said
railroad track and in front of approaching cars.   Said
ditch and wall extended from Spruce street, which
crosses Twelfth street at right angles, alongside of said
railroad track to the north end of said Twelfth street
bridge, and pedestrians passing in either direction
along the west side of said Twelfth street, were unable to

cross said ditch and wall and go upon or over said Twelfth street bridge at any other place or in any other way than across said foot bridge and through said aperture, upon and over said railroad track and in front of approaching cars as aforesaid.''

It cannot certainly be successfully maintained that a municipal corporation may not lawfully dig sewers so as to drain the city and promote the health of the inhabitants. It is the right and duty of the city to have a proper sewer sytem. There is then nothing reprehensible in the purpose of the excavation itself, nothing that would denote indifference to the interests of the public, either in providing for the construction of the sewer or the ordinance under which it was built. No improvements in a city could be made if such a rule were adopted. Temporary inconvenience must be submitted to in building houses abutting on the streets, and laying pipes and making sewers in cities. Of course for negligence in leaving the same in an unguarded condition, or without signals, the city and contractor would be liable. But, while it was alleged that the wall was negligently built, and the bridge negligently constructed, it is not pretended that any defect in the construction of either caused the injury. The boy was not hurt by the falling of the wall; he did not fall in the ditch because the bridge was too narrow or otherwise defective; he did not wander into the sewer for want of signals or guards. Although it is alleged that it was negligent to build it on the east side of the excavation, it is evident that this of itself did not cause the injury, indeed it would seem that it would have ordinarily afforded more safety to the public.

As to the opening in the wall. It would seem that the construction company was endeavoring to avoid obstructing the street and endeavoring to facilitate travel in its accustomed route as much as possible, and

this of itself was praiseworthy.  So that the case is at last reduced to the charge that this wall was so constructed, and aperture left in it, *that it invited the public to step from it, immediately into a place of danger*.  As to this, the evidence showed without substantial contradiction, that the west rail of the street car track at this point was four and one half to five feet from the east line of the granite wall, with no obstruction whatever in the walk so left south to the bridge.  Nor was there any street crossing connecting with this opening, nor does the evidence tend to show that this opening invited travelers to cross the street at this point, or that they had been in the habit of so doing.  On the contrary, the evident intention was to enable them to continuo north and south on the west side of the street, *without crossing the street*.  This created a temporary inconvenience, but in what way did it contribute to the injury.  The petition does not show how said construction company in any way *caused or compelled* the railroad company to act negligently in the premises; on the contrary, granting that the combination of circumstances, charged, was negligence on the part of the construction company, the pleader avers a state of facts which show that the said negligence of the Heman Construction Company was broken by a new, independent cause, to-wit, the negligence of the Union Depot Railroad Company, without whose active agency no harm could have resulted to the boy.

There is no doubt about the proposition that joint tort feasors are each liable, but, to hold them jointly liable, they should have either acted in concert or the act of one would naturally result in causing the act of the other.  Now it cannot be logically or reasonably maintained that the building of this sewer, wall and bridge, as they were on the day of the accident, in any manner, caused the Union Depot Railroad Company to disregard

the ordinances of the city as to speed, or in any way relieved its drivers from the duty of keeping their teams under control, and a sharp lookout ahead. They were independent agencies; neither had the slightest control over or connection with the other. Their acts as alleged, were separate and distinct.

With a space of five feet to walk in, could the sewer company reasonably anticipate that persons would blindly walk out and beyond it upon the railroad track? Could the little boy Stanley have heedlessly attempted to run across the street in front of the car, if there had been no ditch, no bridge, no wall of granite and no aperture in the wall, and if so, could he have been run over by the car and killed as he was? It is evident he could. If he could, then all these acts of the city and construction company could be discarded and the death of the boy attributed to other causes, either to his own heedlessness or the negligence of the car company. There is then no necessary connection between his death and the construction of the sewer as it was.

Many refinements have been indulged in by text writers and judges as to remote and proximate cause, and it is often difficult to place the responsibility where it should rest. The fact that the construction company may have built the granite wall too close to the car track, and that this was afterwards followed by an injury, does not make a case. The connection between the cause and effect must be established. It seems to us that, under the allegations of the petition and the evidence in this case, either the acts of the street railway company, or of the little boy, were the proximate cause or direct cause of the injury, and that of the construction company if at all, at most a remote cause. In the language of the cases, there is no act of the construction company which in a natural and continuous sequence,

unbroken by any new responsible cause, produced this most unfortunate result, and without which it would not have happened.

The uncontradicted evidence shows that after the boy had passed through the wall, he had four and one half to five feet yet to stand or walk in before getting on the track, there was then no such position of danger as was described in the petition. As the public had never been in the habit of crossing the street at this place, but, on the contrary, had used the street along the walk left by the construction company, neither the railroad company nor the construction company could reasonably expect any one to blindly rush across the street at this place, more than at any other point, and if not, then it cannot be said they might reasonably have anticipated the result. Had the little boy been walking south on the path of five feet left, and the extra horse had trampled on him by reason of not having room, another and different conclusion might have been reached as to both the railroad and construction company, but we have no such case before us.

When the uncontradicted facts appear in the record, it is competent for us to declare as a matter of law whether they constitute negligence, and, under the facts disclosed herein, we think the court below should have sustained the demurrer to the evidence, both as to the city and construction company, and for failure to do so the judgment is reversed. All of this division concur.