O. C. PRINCE, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Appellant.—No. 40608.—214 S. W. (2d) 707.

Division One, November 8, 1948.

*Cyrus Crane, Winston H. Woodson, James F. Walsh* and *Sam D. Parker* for appellant.

394

*F. M. Kennard, A. C. Popham, S. David Trusty* and *Sam Mandell* for respondent; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

[708] CLARK, J.—In the circuit court of Jackson County plaintiff procured a judgment for $20,000.00 and defendant appeals. This is a personal injury action to set aside a release for fraud and misrepresentation and for damages under the Federal Employers' Liability Act. Plaintiff was employed by defendant as a blacksmith's helper in its shops at Shreveport, Louisiana. On June 16, 1944, he was struck and injured by the fall of a heavy iron which he and two other employees were carrying.

As the judgment must be reversed and the case remanded for a new trial for error in giving plaintiff's instruction number two, only such evidence as bears upon that question will be recited.

When injured plaintiff was given emergency treatment and a day or two later reported to the Highland Clinic in Shreveport. There he was examined by Dr. LeDoux, a surgeon on the staff of the Kansas City Southern Employees Hospital Association. This Association is maintained for the benefit of defendant's employees. A portion of their wages is checked off for its support and they are represented

on its board of directors. Plaintiff was a member and entitled to receive full medical, hospital and surgical service.

After examining plaintiff and causing an X-ray to be taken of his chest, Dr. LeDoux advised him that an operation for hernia would be necessary, but because of a rash on the doctor's hands he could not then operate.

In July, 1944, plaintiff employed a physician of his own choosing, Dr. DeLee, who examined and treated him two or three times a month from that time on.

In September, 1944, Dr. LeDoux sent plaintiff to the Wheatly Hospital at Kansas City. He entered the hospital on September 29 under the care of Dr. Miller, Chief Surgeon of the Employees' Hospital Association. Dr. Miller operated on plaintiff for hernia on October 9 and discharged him from the hospital on October 29, giving him a note addressed to his foreman stating that he would return to work on December 1, 1944.

Plaintiff testified that while in the hospital he several times requested Dr. Miller to fill out some accident insurance blanks and that each time the doctor told him he would not do so until plaintiff settled with the railroad. Also plaintiff testified that about October 28 the doctor told him he was all right, nothing wrong with him, he could go back to work on December 1 and for him to settle with the railroad.

About November 1, plaintiff returned to Shreveport. There he saw his doctor, DeLee, and also the company physician. About December 1 he says he went to defendant's claim agent Mitchell who gave him a draft for $600.00 and took from him a release. Although plaintiff signed the release he says that he did not read it; that Mitchell read it to him in part, but did not read certain important portions of it. Plaintiff says that he told Mitchell all that Dr. Miller had said to him and that Mitchell told him that Dr. Miller was a good man, a good doctor, and that plaintiff could rely on what he said. Plaintiff says he signed the release in reliance upon the statements made to him by Dr. Miller and claim agent Mitchell.

Plaintiff did not go back to work for defendant. He testified that at all times after his injury he suffered from constant and severe pains in his chest and that he so told all the doctors who examined him including Dr. Miller. On February 28, 1945, plaintiff entered the Highland Clinic at Shreveport and remained several weeks. There it was found that he was suffering from pleurisy with an effusion and the pleural cavity was drained several times.

[709] Instruction number two given at plaintiff's request reads as follows:

"The Court instructs the jury regarding the release described in evidence, if you believe from the evidence that plaintiff submitted

himself to the medical and surgical care of Dr. Miller and received an abdominal operation at his hands in October, 1944, and if you find that Dr. Miller discharged plaintiff from the hospital about October 29, 1944, and if you find that prior to said operation and afterwards and when so discharged from the hospital plaintiff was suffering severe pains and permanent disabilities in and about his chest and body and so advised Dr. Miller and told him he felt pains and coldness therein, if you so find, and if you find that plaintiff asked Dr. Miller to fill out blanks so plaintiff could collect needed insurance payments and if you find Dr. Miller stated to plaintiff that he could not sign said blanks until plaintiff went and settled his claim with the railroad and told plaintiff to go and see the Claim Agent, if so, and represented and stated to plaintiff that the painful conditions and coldness and symptoms he complained of were merely symptoms from the operation and that there was nothing else wrong with plaintiff and that plaintiff was able to resume his work and do heavy lifting, if so, and thereupon wrote out and gave to plaintiff a writing addressed to defendant indicating that plaintiff would resume his work December 1, 1944, if so, and if you find that by the aforesubmitted statements and actions of Dr. Miller he represented in substance and effect that plaintiff had recovered and had no disability or injury or condition that would permanently disable plaintiff or keep plaintiff from resuming and continuing his usual work and earning a livelihood, and if you find that the aforesubmitted representations were untrue and that Dr. Miller knew them so to be or that in reckless disregard of plaintiff's rights Dr. Miller failed to make reasonable efforts to ascertain the facts, if so, and if you find that when the aforesubmitted statements and actions of Dr. Miller took place, if so, plaintiff was then suffering from injuries that were serious and permanent and disabling and would permanently prevent him from resuming his work and earning a livelihood, if so, and if you find that plaintiff believed and acted upon the aforesubmitted statements and actions of Dr. Miller and that in reliance thereon, if so, plaintiff went to the Claim agent of defendant and told him he didn't know as to settling and that he was still suffering and disabled and told him of all the aforesubmitted statements of Dr. Miller, if so, and if you find defendant's Claim Agent represented to and told plaintiff that Dr. Miller knew what he was doing and that plaintiff could safely rely on what Dr. Miller had said, and if you find such statement of the claim agent was knowingly untrue or was made in reckless disregard of plaintiff's rights without making reasonable efforts to learn the facts, and if you find said Claim Agent presented a written release for plaintiff to sign for a stated consideration of $600.00 and if you find said Claim Agent thereupon purported or pretended to read said whole release aloud

to plaintiff and that plaiintff did not read same, if so, and relied on said Claim Agent to read it correctly, if so, and if you find that said release contained this language: 'I am using my own judgment and not relying upon any statement or representations made by any agents, employees or physicians of said Railway or other companies', and if you find said above quoted language was not read to plaintiff, and if you find that in signing said release plaintiff was unaware of said above quoted language and if you find plaintiff relied entirely on the aforesubmitted statements and actions of Dr. Miller and said Claim Agent and had reasonable grounds so to do, if so, and was solely thereby misled and fraudulently, if so, induced and caused to sign said release, if so, and that plaintiff would not otherwise have signed it, if you so find, and if you find that Dr. Miller was at all of said times a representative and servant of defendant and was so acting in the service of defendant and in its medical department and in all the aforesubmitted respects was representing defendant and acting in mutual cooperation with defendant's claim [710] department and under and subject to and in accordance with its general directions and orders and in the interest of and for the benefit of defendant, if so, then you are instructed that said release is not binding on plaintiff Prince.''

The instruction consists of a single sentence, containing more than 700 words and submitting more than forty separate questions. Many of those questions are immaterial, but prejudicial, and the instruction as a whole is an argument for plaintiff rather than an explanation of legal issues. Some of the matters presented in the instruction are not supported by any evidence which we can find in the record; for instance, the instruction says ''plaintiff went to the claim agent of defendant and told him he didn't know as to settling and that he was still suffering and disabled—if so.'' Plaintiff testified that he told the claim agent what Dr. Miller had said, but did not say he told him that ''he didn't know about settling and that he was still suffering and disabled.'' If he did tell the claim agent that it would be some indication that he then knew his condition and was not relying on representations made by Dr. Miller. Other portions of the instruction unfairly emphasize immaterial excerpts from the testimony.

This case is a close one and the evidence is in sharp conflict. Viewing the evidence in a light most favorable to plaintiff and according him every reasonable inference, a serious question remains as to whether he made a submissible case for avoidance of the release. The instruction submits the question whether the representations alleged to have been made by Dr. Miller were untrue and that he ''knew them so to be or that in reckless disregard of plaintiff's rights Dr. Miller failed to make reasonable efforts to ascertain the facts, if so

. . . .'' Plaintiff was examined by many doctors, including his own, and it seems that none of them found that he was suffering from a serious chest injury until long after the alleged representations were made. Then, there is the question of whether plaintiff relied on the alleged representations. He testified that he had pain in his chest at all times after the injury. He did not sign the release until a month after his last interview with Dr. Miller and in the meantime he consulted and was examined by his own doctor and another doctor.

The instruction is unnecessarily long, complicated, argumentative, misleading and confusing.

. We are unwilling to reverse the case outright, but must remand it for the error mentioned. [Stid v. Mo. Pac. Ry., 236 Mo. 382, 139 S. W. 172; Ensler v. Mo. Pac. Ry., 324 Mo. 530, 23 S. W. (2d) 1034; 23 Am. Jur., Fraud and Deceit, sections 141, 143, 144, 145.] It is unnecessary to pass upon other assignments.

The judgment is reversed and cause remanded. All concur.