CADE **v.** ATCHISON, T. & S. F. RY. CO.

No. 42902.

Supreme Court of Missouri.

En Banc.

March 8, 1954.

John H. Lathrop, Sam D. Parker, Kansas City, Richmond C. Coburn, Thomas L. Croft, St. Louis, for appellant.

Francis H. Monek, Chicago, Ill., Claude W. McElwee, St. Louis, for respondent, Henslee, Monek & Murray and Melvin L. Griffith, Chicago, Ill., of counsel.

HYDE, Judge.

Action for damages for personal injuries under the Federal Employers' Liability Act. 45 U.S.C.A. §§ 51–60. Verdict and judgment for plaintiff for $126,000 reduced by remittitur of $51,000 to $75,000; and defendant has appealed. Defendant contends it was entitled to a directed verdict and also alleges error in instructions, admission of evidence, and failure to grant a mistrial because of misconduct of plaintiff's counsel.

Plaintiff was acting as foreman of a switching crew at Wellington, Kansas, when injured by falling over the drain box, or catch basin of a sewer, which projected about 6 inches above the ground. Plaintiff was in charge of a switching movement about 11:00 p. m. which had brought a cut of 12 or 14 cars from a mill. Some of these were loaded cars to be sent out and others empty cars to be placed on the mill tracks in accordance with the switch list given to plaintiff by the yardmaster. Defendant's main line ran east and west through Wellington, a city of about 10,000 population. Where plaintiff was working there were three tracks and the cars, being switched, were on the third or south track with the engine on the east end pulling them east. The main street of Wellington was Washington Street, over which U. S. Highway 81 (a Gulf of Mexico to Canada Highway) was routed; and it carried considerable traffic. The next street west was Jefferson Street, which also had much traffic, being often used by trucks to miss the main street traffic. Defendant's station was between these two streets on the north side of the main line track. These two streets were about 280 feet apart. Plaintiff's cut of cars blocked Jefferson Street and the engine partially blocked Washington Street. The track to the mill curved off to the southwest with the switch about 36 feet south of Jefferson Street.

Plaintiff stayed by this switch and operated it. There were four other men in the crew. The engineer and fireman stayed in the engine. The pin puller or head brakeman worked near the front of the

train and cut off cars as plaintiff directed. The field man, or rear brakeman, rode the cars that were kicked off and stopped them by use of the hand brake. This was the usual switching crew and the number provided for in the contract between defendant and the union representing yardmen. There was a considerable grade downhill to the southwest on the mill switch track, so that it was necessary to use the hand brakes on any cars detached to keep them from rolling to the southwest. The three switchmen worked on the south side of the track because the engineer was on that side and could see their signals when given from that side. The pin puller also protected Washington Street when it was blocked and plaintiff protected Jefferson Street to keep northbound traffic from running into the cars. There was no one to protect on the north side against southbound traffic. There were three other street crossings between the switch and the mill, but there was no evidence to show conditions or amount of traffic on them.

There were no warning lights, bells or signaling devices at either street to warn of the presence or approach of cars on the tracks. A watchman was stationed at Washington Street from 6:00 a. m. to 10:00 p. m., but there was none at Jefferson Street at any time. Plaintiff's evidence showed that traffic from the south on Jefferson Street approached the crossing on a downgrade; that, from 200 to 250 feet south of the crossing, a motor vehicle driver could see over the tops of the cars and the lights of the business district beyond; and that, because of these conditions, northbound drivers on Jefferson Street would not see cars, blocking the crossing, until "right on them." Defendant had built an underground sewer south of the tracks to take care of the surface water, keeping it off the tracks; and in the curb, about ten feet south of the south track, on each side of Jefferson Street, it had built large concrete drain boxes, or catch basins, to take the water from the street into the sewer. Plaintiff's evidence was that the drain box on the west side, nearest the switch where plaintiff was working, was 4 feet 3 inches long, 2 feet wide, and 16¾ inches high

(above the street) and extended 6¾ inches above the top of the curb and 6 inches above the ground on the west. It was also shown that it was necessary for the switchmen to work in this area and farther to the south to give signals that could be seen by the engineer. There were no lights of any kind there or nearby and it was very dark the night plaintiff was injured.

While plaintiff was at the switch, directing an uncoupling, he told the field man to get up on a car and set the brake. The field man, going up the side of the car, saw an automobile coming north on Jefferson Street at a high rate of speed and called to plaintiff to look out for the automobile. Plaintiff thought the driver did not see the cars and ran as fast as he could toward the street trying to attract the driver's attention with his lantern. In doing so, he tripped over the top of the drain box, fell into the street and was injured.

Plaintiff's petition contained nine separate specific charges of negligence, but those concerning negligent construction, maintenance, inspection, unsafe method of work and failure to warn, were abandoned (so far as this appeal is concerned) by not being submitted. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Smith v. St. Louis Public Service Co., Mo. Sup., 259 S.W.2d 692. The grounds submitted were failure to have a light to reveal the projecting drain box, failure to provide any signaling device at the Jefferson Street crossing, and failure to provide a sufficient number of employees in the switching crew so that an employee could be stationed as a watchman at the crossing. While as hereinafter shown, these were seemingly submitted as separate specific grounds of recovery, they could have all entered into the consideration of the safety of plaintiff's place of work. Certainly, failure to light the place so as to reveal the obstruction in the area where plaintiff, and the others, had to work was sufficient to make a jury issue of failure to furnish plaintiff a safe place to work under the conditions shown by the evidence. Therefore, from the facts submitted, we construe plaintiff's instruction 2 as submitting that

issue, which was one of the grounds pleaded and was stated as the duty of defendant in instruction No. 1. Rights created by the Federal Employers' Liability Act "are federal rights protected by federal rather than local rules of law" but "those federal rules have been largely fashioned from the common law"; and "At common law the duty of the employer to use reasonable care in furnishing his employees with a safe place to work was plain." Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444. As further stated in the Bailey case concerning the duty to furnish a safe place to work: "That rule is deeply engrained in federal jurisprudence" and this duty "is a duty which becomes 'more imperative' as the risk increases"; and is "a 'continuing one' from which the carrier is not relieved by the fact that the employee's work at the place in question is fleeting or infrequent."

▆▆ Defendant's contention as to this matter is that failure to have a light was not the proximate cause of plaintiff's fall because plaintiff was carrying an electric lantern which normally would have revealed the drain box. Defendant argues it was the approach of the automobile that caused plaintiff to fail to see the drain box and that this would have been true even if the area had been lighted. Defendant also argues that this result could not have been anticipated and that the reckless approach of the driver of the automobile was an intervening direct and proximate cause of plaintiff's fall. Defendant cites Stid v. Missouri Pac. R. Co., 236 Mo. 382, 139 S. W. 172; De Moss v. Kansas City Rys. Co., 296 Mo. 526, 246 S.W. 566; Jones v. Atchison, T. & S. F. R. Co., 129 Kan. 314, 282 P. 593; Stanley v. Union Depot R. Co., 114 Mo. 606, 21 S.W. 832; Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W. 2d 807. In the Stid case, the plaintiff went over an embankment not because of lack of light but because of his momentum from getting off a moving engine. The other cases are ruled on foreseeability and intervening cause, except the Wood case [362 Mo. 1103, 246 S.W.2d 811], which is cited

because it states that "the usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained." Proximate cause is ordinarily a jury question. Young v. Wheelock, 333 Mo. 992, 64 S.W. 2d 950 and cases cited; Curtis v. Fruin-Colnon Contracting Co., Mo.Sup., 253 S.W. 2d 158. Our view is that reasonable minds might differ as to defendant's contention and that proximate cause was for the jury in this case because of the conditions shown by the evidence and the kind of work plaintiff was required to do in this area both in signaling and in protecting the crossing. In a similar case, Curtis v. Atchison, T. & S. F. R. Co., Mo.Sup., 253 S.W.2d 789, 792, we said: "The combination of having this obstruction between the tracks and darkness justified a finding by a jury that it created an unsafe place to work and negligence on the part of the defendant." See also Luthy v. Terminal R. Ass'n, Mo.Sup., 243 S.W.2d 332 and cases cited. We hold that defendant's motion for a directed verdict was properly overruled.

▆▆ However, we must sustain defendant's contention that it was prejudicial error to give instruction No. 2 offered by plaintiff. This instruction purported to submit in the conjunctive, as three separate grounds of negligence, failure to light the area, failure to provide any signaling device at the Jefferson Street crossing to warn operators of automobiles, and failure to furnish a sufficient number of employees in the switching crew so that an employee, other than plaintiff, could be stationed at Jefferson Street for warning purposes. This latter ground really amounts to a charge of failure to have a watchman. Defendant requested withdrawal instructions as to the two latter charges. There are several reasons why instruction No. 2 is erroneous. In the first place, the way this instruction is written it gives the impression that defendant was required to do all three of these things when any of them should have been sufficient to make plaintiff's place of work safe from the conditions of which complaint is made. Furthermore, failure to have a signaling device or

watchman were more in the nature of circumstances in the situation to be considered in determining whether plaintiff was furnished a safe place to work, in the absence of light, rather than independent grounds of negligence. These matters also seem to have had more relevancy to the ground of unsafe method of work which plaintiff did not submit. Moreover, when considered as duties, these were primarily duties owed to the public rather than to plaintiff. See Karr v. Chicago, R. I. & P. R. Co., 341 Mo. 536, 108 S.W.2d 44. In other words, without this protection, motorists were in danger (under conditions shown by the evidence but not hypothesized in the instruction) of running into cars on the crossing, but plaintiff was not in danger of being run over by an automobile while in his place of work. Certainly instruction 2 confuses the matter of defendant's duty to the public with its duty to plaintiff in such a way that a jury could not understand what issues were properly for their decision.

We also must condemn instruction No. 2 for the reasons stated in Prince v. Kansas City Southern R. Co., 358 Mo. 393, 214 S.W.2d 707, 710, as "unnecessarily long, complicated, argumentative, misleading and confusing"; and in Stid v. Missouri Pac. R. Co., 236 Mo. 382, 139 S.W. 172, 177, as "leaving a jury to become confounded in a labyrinth of immaterial detail." See also Roshel v. Litchfield & M. R. Co., Mo.App., 112 S.W.2d 876. Instruction No. 2 was more than twice as long as the one we criticised in the Prince case and is too long to set out in this opinion. It repeats many matters several times, such as referring to part of the sewer projecting above the ground eight times, referring to plaintiff tripping over it five times (and this was a hotly contested issue because plaintiff had made a report stating he stepped or stumbled off the curb), referring four times both to plaintiff running and to peril of a collision of the approaching automobile with the cars, and referring three times to darkness. It also emphasized danger to life, limb and property of others and authorized the finding that an emergency was created. These were not the real issues to be decided in determining whether defendant was negligent and tended with the other matters mentioned to make the instruction "an argument for plaintiff rather than an explanation of legal issues." See Prince case, 214 S.W.2d loc cit. 710. Emergency could have a bearing in this case only on contributory negligence of plaintiff, which is not a defense in this kind of a case and was not even claimed or pleaded by defendant; and thus its inclusion injected a false issue. As to the emergency doctrine see Rohde v. St. Louis Public Service Co., Mo.Sup., 249 S.W.2d 417. We, therefore, hold instruction No. 2 prejudicially erroneous.

Since this case must be retried we think it advisable to rule that we find no merit in defendant's allegations of error as to admission of evidence. Defendant's Rule 805, as to cars on crossings, was relevant even though it did not cover all situations. The other matters of which defendant complained tended to show material circumstances of the entire situation involved. As to defendant's complaint of misconduct of plaintiff's counsel, most of these matters are not likely to occur on retrial. However, we think we should point out two of them which at least when considered together, would have warranted the granting of a new trial by the trial court. In his opening statement, plaintiff's counsel said that the doctor who operated on plaintiff "told him he would need a new operation and he will never be able to work." Upon objection that this was improper hearsay unless plaintiff brought in the doctor, plaintiff's counsel said: "I don't intend producing the doctor." It was certainly improper for plaintiff's counsel to in effect attempt to put in evidence statements that he knew he would not attempt to substantiate by testimony of the witness he purported to quote. Likewise, it was improper for plaintiff's counsel, after the Court had sustained an objection to a question concerning the cause of a witness (another switchman) leaving defendant's employ, and after being warned to make an offer of proof, then deliberately to state in

another question that this man's reason for leaving was the incident in which plaintiff was injured, instead of making an offer of proof out of the hearing of the jury. The Court's rulings should be respected and obeyed.

The judgment is reversed and the cause remanded.

All concur.