## ORA W. STID v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, July 7, 1911.

1. **MOTION FOR NEW TRIAL: Sufficient Specifications of Errors: Review on Appeal.** The motion for a new trial in a law case need only be in general terms, and need not point out specifically the evidence admitted or excluded, or the instructions given or refused. If it recites that the court erred "in giving each of the instructions given at the request of plaintiff" the instructions for plaintiff on defendant's appeal are for review on all points and for all purposes. And if it recites that the court erred in admitting incompetent evidence

for plaintiff and in refusing to admit competent evidence for
defendant, the rulings of the court in either respect are for
review on defendant's appeal.

2. ————: ————: **Error in Instruction: Not Assigned in Brief:
Consideration.** Where there has been saved an exception to
the giving of an instruction for respondent, and the motion for
a new trial assigns the giving of such instruction as error,
the court on appeal will consider any error the instruction
contains, whether such error is assigned in appellant's brief
or not. The instruction may not be vulnerable to the assign-
ments made by appellant in his brief, but if an exception was
saved to the instruction and the giving of it was challenged
by the motion for a new trial, such exception goes to the
whole matter of the instruction and it may be condemned for
any error apparent to the appellate court.

3. **INSTRUCTION: Verbose.** An instruction set out in the state-
ment, setting forth at length the pleaded facts, is condemned
for its verbosity, which is held to be sufficient to mislead any
average jury.

4. ————: **Conflicting: Negligence: No Light.** An instruction
given for plaintiff directing the jury to consider the darkness
of the night and the absence of a light upon the car which
plaintiff stumbled upon, is in conflict with one given for de-
fendant telling them that there is no evidence tending to show
that the accident was caused by insufficient lights in the yards
where the accident occurred.

5. ————: **No Evidence: Absence of Light.** Where plaintiff's
evidence shows that the absence of light did not induce his
fall against the moving car, but does show that he carried a
lantern to enable him to properly do his work, an instruction
for plaintiff directing the jury to take into consideration the
darkness of the night and the absence of light from the car,
should not be given, and an instruction for defendant telling
the jury that there is no evidence that the accident was caused
by insignificant light should be given.

6. ————: ————: **Purpose of Alighting from Train: Switch-
man: Allegation and Proof.** Where there is no evidence that
the injured switchman alighted from the train "for the pur-
pose of signalling the engineer in charge of said engine when
the rear car of said train had passed said switch and to throw
said switch that said car might be run in on said track" no
instruction incorporating those words should be given, although
they were a part of the petition. An instruction cannot out-
run the proof, whatever may be the pleadings.

7. ————: **Damages: Amount Sued For.** It is not error to tell
the jury in a suit for tort that if they find for plaintiff they
are authorized to assess his damages at an amount not in

excess of the formal damages laid in the petition. An instruction telling the jury that if they find for the plaintiff "they will assess his damages at such sum, not exceeding twenty-five thousand dollars, as they may believe from the evidence," etc., is not reversible error. But held by GRAVES, J., that such an instruction is an intimation to the jury that a verdict for the full amount asked for would be approved, and therefore misleading and prejudicial.

8. **NEGLIGENCE:** Demurrer to Evidence: Switching Cars: Gravity Yards. Two crews were switching cars in a switch-yard in which were several tracks. The main line was higher than the nearest switch track, which was nine feet distant—some of the evidence showing it was from 12 to 18 inches higher, and other testimony that it was only 7 or 8. The road-bed sloped, and as the train passed on the main track the foreman directed the plaintiff switchman to get off. He did so and stumbled down the embankment, and fell against a car passing on the switch, and was injured. *Held*, that if the yard is a gravity yard, that is, yards in which the switch-tracks at certain points must be lower than the level of the main tracks, so that cars will not run from the switch to the main track; and if the construction was the ordinary and usual construction for such yards, plaintiff cannot recover. But the evidence is so scantily developed on both sides that the court cannot with propriety determine whether or not a demurrer thereto should have been sustained; and in view of the fact that the judgment must be reversed because of error in the instructions, the cause is remanded for new trial.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates*, Judge.

REVERSED AND REMANDED.

*Elijah Robinson* and *R. T. Railey* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained by the trial court, as there was no substantial evidence upon which to submit the case to the jury. Powell v. Railroad, 76 Mo. 80; Commissioner v. Clark, 94 U. S. 284; Bank v. State, 10 Wall. 639; Jackson v. Hardin, 83 Mo. 175; Avery v. Fitzgerald, 94 Mo. 207; Long v. Moon, 107 Mo. 338; Moore v. Railroad, 28 Mo. App. 622; Peck v. Railroad, 31 Mo. App. 123; Zurfluh v. Railroad, 46 Mo. App. 636; Peffer v. Railroad, 98 Mo. App. 291; Railroad v. Shirtle, 97 Pa. St. 450. (2) The court committed error

in excluding the defendant's evidence tending to show that the tracks in question were constructed in the usual way in which railroad tracks are constructed in railroad terminal yards. (3)   The court committed error in giving plaintiff's instruction number 1.   a. It assumed that at the time of the accident the plaintiff was in the exercise of ordinary care.   b. It submitted to the jury the question as to whether plaintiff fell and tumbled down the embankment; when there was no evidence upon which to submit any such issue. c. It submitted to the jury the question as to whether plaintiff knew that the sidetrack was lower than the main line track, when the evidence shows that he either knew that fact or was guilty of negligence in not knowing it.   d.   Said instruction was calculated to mislead the jury.   Peck v. Ritchey, 66 Mo. 121; Comer v. Taylor, 82 Mo. 341; Strong v. Hunt, 94 Mo. 475; Sweeney v. Railroad, 150 Mo. 385; Plummer v. Milan, 70 Mo. App. 598; Linn v. Bridge Co., 78 Mo. App. 111; Orscheln v. Scott, 79 Mo. App. 541; 11 Ency. Plead. & Prac. 116; Iron Co. v. Peck, 112 Ill. App. 444; Railroad v. Mason, 13 Ill. App. 72; Clark v. Kitchen, 52 Mo. 316; Donahue v. Railroad, 83 Mo. 560; Chouteau v. Iron Co., 82 Mo. 73; Greer v. Parker, 85 Mo. 107; Price v. Breckenridge, 92 Mo. 378; Cole v. Long, 1 Mo. App. 215; Young v. Ridenbaugh, 67 Mo. 57; Bank v. Lonergan, 21 Mo. 46; Legg v. Johnson, 23 Mo. App. 590; Estes v. Shoe Co., 155 Mo. 577; Commission Co. v. Hunter, 91 Mo. App. 333; Pleasants v. Fant, 22 Wall. 116.   (4)   The court committed error in giving plaintiff's instruction number 2; because said instruction amounted to an intimation on the part of the court that any sum not exceeding $25,000 would be satisfactory to the court.   Bryan v. Acee, 27 Ga. 87; Glasscock v. Shell, 57 Tex. 224; Willis v. McNeill, 57 Tex. 478; Fordyce v. Nix, 23 S. W. (Ark.) 967; Gilbertson v. Railroad, 43 N. Y. Supp. 782-4;

Railroad v. Austin, 69 Ill. 428; Railroad v. May, 33 Ill. App. 366; Rost v. Brooklyn Heights, 41 N. Y. Supp. 1069.

*L. H. Waters* and *Frank Hagerman* for respondent.

(1) The servant is entitled to safe instrumentalities, including tracks, bridges, etc. Bowen v. Railroad, 95 Mo. 277; Dale v. Railroad, 63 Mo. 458; Gibson v. Railroad, 46 Mo. 167; Tuttle v. Railroad, 48 Iowa 236; Woods, M. & S., p. 687, sec. 329; Patterson v. Railroad, 76 Pa. St. 389. And a suitable and safe place to work. Sullivan v. Mfg. Co., 113 Mass. 398; Woods, M. & S., p. 695, sec. 334. The master is bound to take all reasonable precautions for the servant's safety. Woods, M. & S., p. 721, sec. 352. The side track as built and maintained was a constant menace to the switchmen. Railroad v. Swett, 45 Ill. 201; Railroad v. Reichart, 87 Tex. 536; Railroad v. Walker, 93 Ga. 462. The fact that the flat car, at the place of injury and 746 feet from the east end of the track was still moving at a great rate of speed is evidence of its negligent construction. (2) If the injury was caused by the concurring force of defendant's negligence and some other force for which it was not responsible, defendant is nevertheless responsible, as its negligence is one of the proximate causes of the injury. Brash v. St. Louis, 161 Mo. 438; Newcomb v. Railroad, 169 Mo. 422. (3) The evidence justified plaintiff's first instruction. Plaintiff did tumble down the embankment, was knocked down by the flat car and then rolled back under the car, and he did not know that the side track was lower than the main track, and his want of knowledge was not the result of his negligence. (4) The instruction as to the measure of damages properly limited a recovery to the damage claimed in the petition, and has uniformly been approved by our

courts. (5) The court did not exclude any evidence offered by defendant as to whether the tracks in question were constructed in the usual way in which railroad tracks are constructed in terminal yards. Witness Conn was asked: "Is it an unusual thing for tracks to be as much lower than the main tracks? A. Well, it is in new yards, it is not unusual for them to be a great deal, or more difference than that." This question had no reference to terminal yards and the answer was not responsive to the question.

GRAVES, P. J.—The petition in this case is somewhat verbose, and but few statements therein go to matters of negligence, but that a full statement of the case may be presented, it is best to outline all the charges of the pleadings, as well as the evidence. Beginning, therefore, with the petition, or rather the amended petition upon which the case was tried, the following, epitomized, is the contents thereof: (1) that defendant is a Missouri railroad corporation; (2) that said defendant had and maintained switch yards in the East Bottoms near the corporate limits of Kansas City, Jackson county, Missouri; (3) that in such yards were a number of tracks on each side of the main track for the purpose of switching cars; (4) that at said time, defendant had in its employ two switching crews, each consisting of a foreman, engineer and switchman, which crew was in charge of a switch engine; (5) that it was the duty of such crews to switch cars as the business of the company required; (6) that at the date of the accident, plaintiff was a member of one of said crews to switch and transfer cars as the business of defendant demanded; (7) that plaintiff had been in the employ of defendant as switchman in one of said crews but one day prior to the accident; (8) that one Ferguson was his foreman and in control of plaintiff and other members of his crew; (9) that plaintiff met with his acci-

dent on the night of October 10, 1904. The petition, in addition to the matters aforesaid, in this language then charges:

"That on the night of said last mentioned day and after dark of said day, plaintiff and the crew of which he was a member were proceeding with a train consisting of an engine and ten cars eastwardly through said yards on said main line, for the purpose of transferring some of the cars of said train to a side track of defendant on the north of said main line.

"That plaintiff and said foreman were then and there riding on said engine of said train, and that before reaching the switch of said side track on which said cars were to be transferred said foreman got off of said engine, and when said engine reached said switch, the plaintiff, by the direction of said foreman and in pursuance of his duty under said employment, got off said engine on the south side of said track of said main line, that he might and could signal the engineer in charge of said engine, to stop when the rear car of said train had passed said switch, and to throw said switch and then to signal said engineer to back in upon said side track, and to repeat to said engineer any signals given by said foreman, for said engineer.

"Plaintiff further states that there was then and there a side track of defendant on the south side of said main line, and that said side track was about eight feet from and about two feet lower than the track of said main line, and that the road bed of said main line then and there sloped down and towards said last mentioned side track. That plaintiff got off of said engine on the south side of said engine, and as he stepped therefrom and out of the way of the cars of said train, he fell and stumbled, without fault on his part, down the said slope of the road bed of said main line to the north rail of said last mentioned side track, and before he was able to recover himself and

get away from said side track, a flat car of defendant came west upon said side track at a rapid and dangerous rate of speed and struck plaintiff and knocked him down and ran upon and against plaintiff and crushed, bruised and injured his legs and back, and that his left leg was thereafter and because of said injuries amputated just below the knee, and that his right leg was because of said injuries thereto and is permanently injured and disabled.

"Plaintiff further states that he entered defendant's employment as switchman, as aforesaid, on the night before he was injured, as aforesaid, and that he did not know at the time he was injured, as aforesaid, that said yards were insufficiently lighted, nor that said side track was then and there lower than said main line, and did not then and there know that the road bed of said main line sloped down and towards said side track, and that he did not at the time he got off of said engine and fell and stumbled, as aforesaid, know that said flat car was coming in on said side track. That there was then and there no light upon said flat car and no one upon or in charge thereof, and that the moving cars of said train made so. much noise that he could not and did not hear the approach of said flat car, and that he then and there did not know that said flat car was upon said side track until it struck him, as aforesaid.

"That said yards were then and there insufficiently lighted. The defendant then and there knew that said yards were insufficiently lighted and that said side track was two feet lower than the track and road bed of said main line, and that said yards were then and there not a safe place for plaintiff to work, in the discharge of his duties as such switchman, and that said side track was two feet lower than the track of said main line and was in an unsafe and dangerous condition for that reason, and so plaintiff says that defendant was negligent in failing to have its said

yards properly lighted and in having and maintaining said side track lower than the track and road bed of said main line.''

Plaintiff prayed for damages in the sum of $25,000, with allegations as to special damages for loss of time and medical attention.

The answer after some specific admissions was (1) a general denial, and (2) a plea of contributory negligence. Reply, a general denial.

Such are the issues made by the pleadings. Upon trial before a jury, the plaintiff had a verdict for $16,000, upon which in due course judgment was entered and from such judgment the defendant has appealed. The sufficiency of the evidence to sustain the verdict is challenged and hence a full statement of the facts proven is required.

Omitting the testimony as to the character of his injuries, which were very serious, plaintiff in his own behalf testified substantially as follows:

That there were two main lines of track in the East bottom through these yards; that the east-going main track was on the south side of the yards and west-going track on the north side of the yards; that there were a number of side tracks upon either side of these main tracks; that at the date of the accident and at the place of the accident the switch track just south of the south main track was ''from fourteen to eighteen inches or two feet lower'' than the main track; that on the night of the injury he went to work about seven o'clock p. m.; that he was injured on his first trip through the yards; that he was on the south main line track running east; that to the south of this was the switch track which was lower; that he and his foreman, Ferguson, were riding upon the front board of the switch engine:

In chief, he then describes the accident:

''Just before I stepped off, the foreman says to me, he says: 'We'll get off here,' he says, 'and throw

in some cars in this elevator.'  So he stepped off first, and I rode on to the switch; as I got off at the switch, I got off right opposite the switch, on the south side of the track, and as I got off, the force of me, and the train running, forced me over this little embankment, just far enough to get hit by this box car, which met me at the time.

"Q.  Where?  A.  On that switch.

"Q.  Switch or side track?  A.  Side track.

"Q.  As you got off the car the engine was moving—you got off of the engine?  A.  Yes, sir.

"Q.  And the momentum—

"Mr. Robinson: I object to Col. Waters leading the witness.

"Q.  How did you come to stumble, fall, or get down to the side track?

"Mr. Robinson: I object to that; the witness has never said that he stumbled or fell.

"The Court: State what happened, if anything.

"A.  I stepped off, off the embankment; if the main line track had not been higher than the side track, and sloping, I don't think I would have fallen down—I would not have fallen down.

"Q.  How?  A.  I could not have fallen down, if the bank—could not have fallen down that bank or stumbled down.

"Q.  State to the jury, now, what occurred to you when you reached that side track?  A.  I got caught by this flat car and it knocked me down and ran over me.

"Q.  Which way was it going?  A.  West.

"Q.  And your train was going east?  A.  My train was going east.

"Q.  Before it struck you, state to the jury whether or not you had seen that flat car?  A.  I could not see it, no."

Further on in chief, he said:

"Q.  Now, Mr. Stid, state to the jury how it struck you and where?  A.  It struck right in the side.

"Q. What was the result of that, how did it hurt you? A. It knocked me off, and I rolled over; if the bank had not been gradually sloping down, why, I would have never rolled in under the car, probably.

"Q. How did it hurt you? A. It ran over both legs."

It would appear that there was a moving flat car on this switch or side track, which had been pushed in by the other switching crew. It also appears that plaintiff had been raised and lived near the East bottom yards, and was there before the yards were established. He says, however, that his knowledge of the relative height of the two tracks was obtained whilst he was there that night, and after his injury, which injury consisted in both legs being run over by the flat car, and one of which was so injured that it had to be amputated.

On cross-examination he made the following statements and admissions:

"Q. Now, you stepped off the engine, and the force of stepping off took you over near enough to the side track that the car that was coming struck you? A. Yes, sir.

"Q. And you went over involuntarily, from the force of getting off of the engine? A. Yes, sir.

"Q. And it struck you just as you got off? A. Just as I got off, why, I got far enough over for the car to hit me.

"Q. Do you remember of testifying this way in your deposition? 'How long was it from the time you stepped off the engine until you got hurt? A. Right then.' A. Yes, sir.

"Q. Just then? A. Yes, sir.

"Q. 'You either ran or slid down onto the other track just as you got off, and the other car ran over you?' This is correct? 'A. I was not clean on the track when the car hit me.' This is correct? A. I was not clean on the track when the car hit me.

"Q. You just got close enough for it to hit you in the side? A. Yes, sir.

"Q. You weren't down when the car struck you? A. No, sir.

"Q. The car knocked you down? A. The car knocked me down.

"Q. 'It didn't make any difference whether you heard that car or not? A. Whether I heard it or not? Q. I mean after you got off, inasmuch as you did get off, the question as to whether you could have heard the car would not have made any difference, because you did not go down there voluntarily? A. No, sir.'

"Q. 'And if the car had made ever so much noise, you could not have kept from going down? A. No, sir.' You mean by that that you could not have kept from going over the embankment? A. No, sir.

"Q. In other words, all there is to it, the car was moving and you jumped off, you were on the engine, and in jumping off, you did so with such force that you ran along two or three steps and got close enough for the other car to strike you? A. Yes, sir.

"Q. And you illustrated it when your deposition was taken, by saying when you got off of a street car you walk two or three steps before you can stop, if the car was moving, did you not? A. Yes, sir, I had. . . .

"Q. A man could get off of the engine, step off this way, and hold to it, and could run along by the side of the engine, could he not? A. Certainly.

"Q. If you had done that, you would not have been over next the car, would you? A. Everybody don't do that.

"Q. Answer my question. You could have done that, could you not? A. I do not think I could.

"Q. You had hold of the engine when you got off? A. Yes, sir.

"Q. How many steps did you take to get over to the other car? A. One or two.

"Q. One or two? A. Yes, sir.

"Q. Didn't you take more? A. I do not think I did, I didn't know.

"Q. You don't know how many you took? A. I don't know how many I took, no."

Upon the part of the defendant it was shown that the yards in question were what were known as gravity yards; that the difference between the height of the main track and the side track was from eight to twelve inches; that by actual measurement, it was seven to eight inches; that in such yards and especially when new, as was this, such difference in the height of the tracks was not unusual; that this particular side track upon which plaintiff was injured gradually sloped down from its junction with the main track; that such construction was necessary in order to prevent cars from running back towards the main track after they had been switched therefrom; that the slope from the main track to the side track was a gradual one; that the space between the rails of the two tracks was nine feet, and covered with cinders from the engines; that such space, whilst sloping, was level; that plaintiff had a lantern at the time of accident; that the car which struck him was run at a distance of two car-lengths, or about seventy feet. It also appears that no one was on the moving flat car which struck the plaintiff, nor were there any lights thereon.

Defendant's demurrer to the evidence was overruled and for the plaintiff the case was submitted to the jury upon two instructions, that read thus:

"1. If the jury find and believe from a preponderance of the evidence, that is, from the greater weight of the credible evidence in this case, that the defendant, on October 19, 1905, had constructed and maintained yards for the use of its railroad in the bottom

east of Kansas City, Missouri, and near the corporate limits of said city and known as defendant's East Bottom Yards, and that the main line of defendant's road then and there ran through said yards, and that a number of side tracks of defendant were then and there on either side of said main line and connected with said main line so that cars could be switched from said main line to said side tracks and from said side tracks to said main line; and if the jury further believe and find from the evidence that defendant then and there had in its employ switching crews and that it was the duty of said crews to switch and transfer cars to and from said tracks and that each of said crews had in its charge a switch engine; and if the jury further believe from the evidence that plaintiff was then and there in defendant's employ as a switch-man of one of said crews and engaged as such in the work of operating defendant's said railroad, and that one Ferguson was then and there foreman of said crew and entrusted by defendant with the superintend-ence and control of plaintiff and the other members of said crew in their work; and if the jury further believe from the evidence that on the night and after dark of said 19th day of October, the said crew of which plaintiff was a member was proceeding east on said main line and through said yards with a switch engine and a train of cars for the purpose of trans-ferring some of said cars to a side track on the north side of said main line, and that as said engine passed the switch connecting said side track and said main line the plaintiff alighted from said engine on the south side of said main line by the direction of said foreman for the purpose of signalling the engineer in charge of said engine when the rear car of said train had passed said switch, and to throw said switch that said car of said train might be run in on said side track; and if the jury further believe from the evi-dence that there was then and there a side track of

defendant, which defendant before then had constructed, on a part of its said yard and which then and there was about nine feet south of said main line, and that said side track was from twelve to eighteen inches lower than the road bed and track of said main line and that plaintiff, as he alighted as aforesaid from said engine and while in the exercise of ordinary care, fell and stumbled down the embankment of said main line and near to the north rail of said side track, and that as plaintiff so fell and tumbled and before he was able to recover himself and get away from said side track, a flat car of defendant came west on said side track and struck plaintiff and crushed and bruised plaintiff's legs and he was, without fault on his part, injured thereby; and if the jury further believe from the evidence that because of said injuries, plaintiff's left leg was thereafter amputated just below his knee and his right leg was so crushed and bruised that it was and is thereby permanently disabled; and if the jury further believe from the evidence that plaintiff did not know that said road bed and track of said main line was higher than the track of said side track and that he could not and did not hear the approach of said flat car because of the noise of the said train on said main line and that he did not and could not see said flat car because of the darkness of the night and because said car had no light upon it and because while plaintiff was on said engine said flat car was below him, and if the jury further believe from the evidence that defendant was negligent in the construction and maintenance of its said main line track and its side track and that the said yards at the time and place where plaintiff was so injured was not a reasonably safe place for plaintiff to work as such switchman because the track and road bed of said main line were higher than the track and road bed of said side track, and that defendant had constructed said main line and side tracks as aforesaid, and that plaintiff did

not then and there know that said side track south of said main line was lower than said track and road bed of said main line, then plaintiff is entitled to recover.

"2. If the jury find for the plaintiff they will assess his damages as such not exceeding twenty-five thousand dollars as they may believe from the evidence that he has sustained; in estimating his damages the jury may take into consideration any evidence as to any pain and suffering he may have endured on account of said injuries, the extent of said injuries, and any evidence as to any loss of time because of said injuries, and any evidence as to any expense he may have necessarily incurred for medical treatment in being treated for said injuries."

I. The record in this case is not at all satisfactory. It would be hard to say which side is responsible. It certainly could be improved upon, to say the least. Vagueness and verbosity characterize both pleadings and instructions, and extreme scantiness of proof upon vital questions characterizes the evidence. The briefs are scant upon salient issues and lucid upon matters largely immaterial. The respondent of course is only required to meet the questions urged by appellant and his conduct as to briefs could not be criticised.

In a case of this moment it behooves the court to pass judgment with full consideration. The motion for new trial is on the blanket order rather than one specific in terms. This practice we have never condemned, but rather encouraged. Such motion need only be in general terms and need not point out specifically the evidence admitted or excluded, or the instructions given or refused. If the motion recites, as does this one, that the court erred "in giving each of the instructions given at the request of the plaintiff," the instructions of plaintiff for all points and purposes are here for review.

So, too, if the motion recites that the court erred

in admitting incompetent evidence for plaintiff and also erred in refusing to admit competent evidence for the defendant, such questions are for review in the appellate court.

The impropriety of instruction numbered 1 given for the plaintiff is urged in the briefs. Defendant says that such instruction is erroneous, and assigns some reasons therefor. That it is erroneous we have no doubt, but as to the reasons assigned in the briefs, all of them may not be tenable. But be this as it may this instruction is properly challenged in the record, and the court may seek its own reasons for condemning it, if it be one which should be condemned. The reasons assigned here may be bad, but if there has been an exception to the action of the trial court in giving the instruction, such exception goes to the whole matter and the instruction may be condemned here for any reason which is apparent to this court. If no exception had been taken to the giving of the instruction the question of its legal propriety would not be here.

This instruction to our mind is bad for several reasons:

(a). Its verbosity is enough to mislead any average jury. In this case the issues of negligence are few and simple, and there was no necessity for the long recitation of pleaded facts, contained in this instruction. A very short, concise instruction would have clearly presented the issuable matters, without leaving a jury to become confounded in a labyrinth of immaterial detail.

(b). It directly conflicts with an instruction given for the defendant. For defendant the court gave the following among other instructions:

"The court instructs the jury that there is no evidence in this case tending to show that the accident was caused by insufficient lights in defendant's yards, where the accident occurred."

To our mind this instruction was properly given. Plaintiff carried a lantern for the purpose of enabling him to properly work. And further the evidence given by the plaintiff shows that the absence of light did not. induce his fall. Instruction number one for plaintiff authorizes the jury to consider the question of light as a matter of moment in determining the liability of the defendant. Such instruction uses this language: "and if the jury further believe from the evidence that plaintiff did not know that said road bed and track of said main line was higher than the *flat car because of the darkness of the night and because said car had no light upon it and because while plaintiff was on said engine said flat car was ·below him.*"

We have italicized the language which conflicts. One instruction says that there is no evidence tending to show that the absence of light had anything to do with the injury, but by the other the jury are directed to consider the darkness of the night and the absence of a light upon the car which occasioned the trouble. These two theories are inconsistent and cannot stand. They are in logic and reason as far apart as the north and south pole.

(c). There are things submitted in the instruction upon which there is no proof whatever. For instance the instructions, among a mass of things, say: "And that as said engine passed the switch connecting said side track and said main line the plaintiff alighted from said engine on the .south side of said main line by the direction of said foreman *for the purpose of signalling the engineer in charge of said engine when the rear car of said train had passed said switch and to throw such switch that said car of said train might be run in on said track.*"

There is not a line of testimony that the plaintiff alighted for such a purpose. We have placed in italics the portion upon which there is no .evidence. This instruction was evidently written to conform to the

numerous allegations of the petition and without reference to the evidence. Instructions must conform to the pleadings and evidence. They cannot submit matters beyond the purview of the pleadings, although such may appear in the evidence, nor on the other hand can they submit matters pleaded, but which are beyond the pale of the proof. To submit such matters tends to confuse the issues before the jury. Other delinquencies in this instruction might be pointed out, but these are sufficient. For the errors in this instruction the cause must at least be reversed and remanded.

II. Instruction numbered 2 given for plaintiff is criticised by learned counsel for the defendant. He says that it contains an intimation from the court that $25,000 damages would not be out of the way. This contention is based upon the following language in the instructions: "If the jury find for the plaintiff they will assess his damages *at such sum not exceeding twenty-five thousand dollars,* as they may believe from the evidence that he has sustained."

We have italicized the objectionable clause.

Defendant is not without authority upon this point.

In Rost v. Brooklyn Heights R. Co., 41 N. Y. Supp. 1069, the New York Court said: "The tendency of juries to award a verdict for the plaintiff with large damages in this class of cases is as well established as any fact can be, and it is quite proper for courts, in view of this condition, to caution juries in restraint of the tendency. Frequent embarrassment is found in sustaining for the full amount verdicts in negligence cases upon any fair consideration of the evidence. The charge in this case authorized the jury to award damages to the full amount claimed, $60,000, and nowhere is the charge in this respect qualified. The final charge of the court is, after the colloquy with counsel, that the jury should give to the full damages that will be adequate to the money loss sustained, and the only limitation which the court placed

upon what would be the full and adequate money loss was the sum demanded in the complaint. By calling attention to the amount of the demand in the complaint, and accompanying it by the statement that they could award no more, it left the jury at liberty to award that sum. The rule of law upon which the damages were to be measured was correctly stated by plaintiff's counsel—that they should be adequate compensation for the injury. The learned judge emphasized this by the statement that the jury could give full damages adequate to the money loss. Without passing upon the question whether technical error was committed in the charge which was the subject of the exception, we are of opinion that the charge conveyed to the jury a wrong impression as to the extent of what would be adequate compensation, which may have led them to award the very large verdict which they did— a verdict which seems excessive in amount, based upon any fair construction of the evidence. Upon the whole case we are satisfied that this verdict may have, and quite likely did, proceed from other considerations than those presented by the testimony, and that justice requires the ordering of a new trial.''

In that case the instruction read ''Sixty thousand dollars has been claimed in this complaint. You can not give any more than that. You will not give any more to this plaintiff because this defendant is a corporation, nor will you give any less because it is a corporation. You will not give anything to this plaintiff out of pure sympathy, either by way of giving her a verdict at all or by way of increasing the amount, because of sympathy alone. By that I do not mean to say that you are to harden your hearts, and to be unkind and unfeeling, because nothing of that kind is required of you; but I want to impress upon you that your duty is, under the law, to give only the pecuniary damages sustained by rea-

236 Sup.—26

son of this hurt, if you decide to give her anything.
. . . You will give her whatever you find that dam-
age has been.  If you decide to give her anything, to
the full amount, without any reservation, giving her
all that she is entitled to by way of compensation for
the pecuniary or money loss she has sustained by rea-
son of the hurt that has come to her.''

In Railroad v. May, 33 Ill. App. l. c. 369, the court
says:  ''There is a further objection to said instruc-
tions.  All of them contain the significant suggestion
to the jury that the damages to be awarded are not to
exceed the sum of $5000.  The verdict is for just
$5000.  The instruction numbered six does limit the
damages to those sustained up to the commencement
of this suit, and therefore we must conclude that dam-
ages for any permanent injury, which in cases like the
present usually constitute the most important basis
for allowing damages, were not estimated by the jury
in reaching the verdict.  The conclusion is almost ir-
resistible that the 'damnable iteration' of the phrase
'five thousand dollars' in all the instructions relating
to damages had the effect of inducing the jury to fix
on just that sum.''

The Supreme Court of that State has likewise an-
nounced itself.  In Railroad v. Austin, 69 Ill. l. c.
428, that court said:  ''But it is complained, by
appellants, improper instructions were given for the
plaintiff, and proper ones refused to the defendants.
In examining the instructions, which are very volum-
inous on both sides, and for the most part given as
asked, we have directed our attention to the fifth and
tenth instructions given for the plaintiff, which we are
satisfied should not have been given, and which, being
given, might have contributed very much to the find-
ing of the jury.  The fifth is in these words: 'The
jury are instructed that, by the statute of Illinois,
the plaintiff in this case cannot recover more than five
thousand dollars, and if they believe from the evi-

dence, that the plaintiff is entitled to recover they will render a verdict for no more than that amount.' By all the rules of philology, that is but telling the jury they must render a verdict for five thousand dollars. It is true, the jury did not render such a verdict, but was it not a strong, persuasive argument addressed to them by the court to render a large verdict? The court says to the jury, in effect, You cannot render a verdict for more than five thousand dollars, but it is expected you will render a verdict for that amount. Such an instruction could not fail to have had an improper influence on the jury, and, in a doubtful case like this, the verdict, rendered either way, not subject to be disturbed, to tell the jury they must find to the extent of the law, was improper, and ought to prejudice the finding.''

In a later New York case, Gilbertson v. Ry. Co., 43 N. Y. Supp. l. c. 784, the Supreme Court of New York said: "Upon the termination of the judge's charge, the counsel for the plaintiff made the following request: 'I ask your honor to charge the jury that, taking all the elements into consideration, the jury may award her compensation, fair, reasonable, and just, to any amount not exceeding thirty thousand dollars.' This the court charged, and the defendant excepted. This was an intimation to the jury that, under the evidence which had been produced upon the trial, they would have had the right to render a verdict for $30,000 which was clearly not the fact; and this intimation upon the part of the court in regard to the nature of the evidence may have affected their consideration, and may have been in some degree the cause of the large verdict which was rendered. Such a charge was eminently calculated to mislead the jury, and to cause them to regard the evidence of the injuries sustained as of greater gravity than its actual purport required. The learned court did not charge that the plaintiff claimed $30,000, and that the jury

were entitled to award such sum as the evidence justified not exceeding that amount, but did charge them that they might award $30,000; clearly intimating that such a verdict might be upheld upon the evidence in the case.''

So, too, says the Supreme Court of Georgia in Bryan v. Acee, 27 Ga. l. c. 92: ''A verdict for two thousand dollars, under the evidence, would, in our judgment, have been excessive, and yet the court charged the jury that if they should believe the plaintiffs were entitled to exemplary damages, the law left it to their discretion 'to say what the amount should be, and they could find any amount they thought proper, provided they did not go beyond the amount claimed in the declaration.' We must suppose that this charge of the court exerted an influence over the mind of the jury, as to the amount of damages, especially when they found a verdict for more than double the value of the property, proven by any witness. Believing that the charge of the court was wrong, and to the injury of the party, we are bound to grant a new trial. In all other respects, we think the charge was unexceptionable, at least it was so in the opinion of two of the members of the court.''

To like effect is a decision from Texas, Willis & Bro. v. McNeill, 57 Tex. l. c. 478, whereat the court says: ''Although it is common to use such expressions as that objected to in the thirteenth assigned error in charges to the jury, and they may be said to be authorized by that part of the pleadings in which the plaintiff alleges the amount of his damages, yet the practice is subject to objection. It is a well known fact that it is the almost invariable rule with the pleader, as a mere matter of form, to place the general allegation of damage at an amount far exceeding any reasonable calculation. *When, therefore, the jury are told that, if they find for the plaintiffs, they are authorized to give damages not exceeding the amount*

*of formal damages thus laid in the pleadings, they may
take such an expression as an intimation upon the
part of the court that the evidence authorized a ver-
dict for the full amount claimed."*

Along the same line is the opinion of the Supreme
Court of Arkansas in Fordyce v. Nix, 23 S. W. l. c.
969, whereat WOOD, J., said: "The trial court should
not have told the jury, however, that if the conduct
of the appellant was wilful, etc., 'they may allow him
additional vindictive or punitive damages,' 'not ex-
ceeding the amount sued for,' the objection being to
the words, 'not exceeding the amount sued for.' Ver-
dicts of juries in actions sounding in exemplary dam-
ages, while they cannot exceed the amount claimed in
the complaint should nevertheless in each case be
reasonable and commensurate with the wrong done,
as shown by the evidence adduced. The amount claim-
ed in the complaint is frequently so exorbitant and
disproportionate to the facts proven as of itself to
suggest prejudice; and to tell the jury in such cases
that they might find in any amount, not exceeding the
amount claimed, would be tantamount to saying that
they would be justified in finding an excessive verdict.
The Supreme Courts of Georgia and Texas have con-
demned instructions containing this language. [Bry-
an v. Acee, 27 Ga. 87; Willis v. McNeill, 57 Tex. 465.]'"

That such an instruction as given in this case is
liable to mislead a jury we have no question. Per-
sonally we think that it is reversible error, but such
does not seem to be the rule of this court. In a re-
view of our cases in Lessenden v. Mo. Pac. Ry. Co.,
— Mo. —, just handed down at this sitting of the
court, VALLIANT, J., goes fully into the question. Yield-
ing to what I think is an erroneous holding upon the
part of our court, the objection to this instruction
will have to be overruled. I can but repeat that
such an instruction is an intimation to the jury that
their finding for the full amount would meet with the

approval of the court and that such an intimation in a case of this kind is sufficient for the average jury. In this case it is true the full amount was not given, but the amount given would be one of grave concern were it a record without other error.

III. It is urged that the trial court erred in refusing to grant a demurrer to the whole evidence. Defendant's evidence did not assist the case made by plaintiff. Reduced to a final analysis, it occurs to us that plaintiff's case turns upon the question as to whether or not defendant furnished to him a reasonably safe place within which to work. That such question is determined by the further question whether or not it was negligence upon the part of defendant to have its side track lower than its main line track, and if it was negligence, then whether such negligence was the proximate cause of the injury. Defendant urges that under the plaintiff's evidence it is not clear that such condition was the cause of the injury, but that from the plaintiff's own statement he could have alighted from the engine by holding on to the hand rail, in such a manner as to have obviated contact with the flat car. Whether plaintiff made a case is a close question under the facts. Upon the present record we should say not, but there is so much which was not developed upon either side, that we will not provide a further inquiry. For instance it is shown in the evidence that this yard is what is known as a gravity yard. That is to say, as we infer from the record, the switch tracks at certain points must be lower than the level of the main track, so that cars will run down the switch tracks, and not run back. The inference from the facts shown is that it is usual in gravity yards to have these switch tracks lower, and the difference of height between the two would depend upon the length of the switch. Part of the evidence indicates that the difference at this point was from 12 to 18 inches, whilst on the other hand it

was shown to be 6 or 7 inches. But be this as it may the evidence in this record is so scantily developed we hardly feel like passing definitely upon the question as to whether or not plaintiff made a case for the jury. We prefer to leave that for further developments upon both sides. If these are gravity yards, and if the construction was the ordinary and usual construction for such yards, then there is no case for plaintiff, but this point is not developed, except inferentially by either side. Plaintiff makes no proof of unusual construction for gravity yards, and defendant contents itself with scantily proving that they are gravity yards, without developing the point.

We are inclined to think that justice will be subserved by reversing and remanding the case. It is so ordered.

*Woodson, J.,* concurs in all except the order remanding the cause; *Lamm, J.,* concurs; *Valliant J.,* concurs in result.