A. W. PALMER, Respondent, v. CHARLES S. HUCK-
STEP et al., Appellants.

St. Louis Court of Appeals, July 3, 1917.

1. **FRAUD AND DECEIT:** Actionable Fraud. A false representation of facts, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by action thereon amounting to a substantial change of position, is a fraud of which the law will take cognizance.

2. ————: Fraudulently Inducing Sale of Land: Sufficiency of Evidence. In an action against a real estate broker and others for fraudulently inducing plaintiff (the broker's principal) to sell real estate for less than he would otherwise have received, *held* that evidence that the broker wrote a receipt acknowledging that he had received part of the purchase price from one Davis (one of the codefendants), partially prepared a deed from plaintiff to Davis, and gave the receipt and deed to the latter, that he paid

part of Davis' expenses incurred in taking the papers to plaintiff, that such receipt and deed enabled Davis to represent to plaintiff that the broker had sold the land to him for a certain sum, and that there was at the time an outstanding contract for the sale of the property for a larger sum, signed by the broker in the name of plaintiff, by which it was agreed that it would be sold to the person who afterwards bought it from Davis for a larger amount than the latter paid plaintiff, was sufficient to warrant the submission of the case to the jury.

3. ———: ———: Instructions. In such case, *held* that an instruction given for plaintiff was not vulnerable to the objection that it ignored a theory of defense, in view of the fact that no such defense was pleaded and the sole issue in the case was the truth or falsity of the allegations of the petition.

4. ———: ———: Instructions. In such case, *held* that an instruction given for plaintiff was not erroneous for failing to require a finding that plaintiff was induced to sell his farm for a lower price by reason of the alleged fraudulent representations, in view of the fact that there was no testimony controverting the fact that plaintiff did, in point of fact, rely upon such fraudulent representations and was induced thereby to sell his farm at a lower price than the real purchaser paid for it.

5. INSTRUCTIONS: Conformity to Issues. An instruction submitting plaintiff's theory of the case is not erroneous for ignoring a theory of defense, where such theory is not embraced within the issues.

6. ———: Assuming Truth of Undisputed Fact. An instruction which assumes the truth of an undisputed fact is not erroneous.

7. FRAUD AND DECEIT: Conspiracy: Circumstantial Evidence. Fraud and conspiracy are usually hatched in secret, and, therefore, can seldom be shown by direct or positive testimony, which makes it necessary to permit them to be established by proof of facts and circumstances tending to show their existence.

8. ———: ———: Evidence: Admissibility of Statements of Conspirator. In an action against a real estate broker and others for fraudulently inducing plaintiff (the broker's principal) to sell real estate for less than he otherwise would have received, evidence that the broker wrote a receipt acknowledging that he had received part of the purchase price from one Davis (one of the co-defendants), partially prepared a deed from plaintiff to Davis, and gave the receipt and deed to the latter, that he paid part of Davis' expenses incurred in taking the papers to plaintiff, and that such receipt and deed enabled Davis to represent to plaintiff that the broker had sold the land to him for a certain sum, when taken in connection with the fact that there was at the time an out-

197 M. A.—33

standing contract for the sale of the property for a larger sum, signed by the broker in the name of plaintiff, by which it was agreed that it would be sold to the person who afterwards bought it from Davis for a larger amount than the latter paid plaintiff, was sufficient evidence of a conspiracy to warrant the admission in evidence of the acts and declarations of the alleged conspirators in furtherance of the conspiracy.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

AFFIRMED.

*R. H. Norton* and *Avery, Dudley & Killam* for appellants.

(1) The court erred in overruling the demurrers to the plaintiff's evidence and to all the evidence. There was no fraud and deceit shown. Edwards v. Noel, 88 Mo. App. 434; Dulaney v. Rogers, 64 Mo. 201; Rawlings v. Bean, 80 Mo. 614; Bank v. Hutton, 224 Mo. 42; Hines v. Boyce, 127 Mo. App. 718. (2) Plaintiff's instruction No. one is erroneous and prejudicial in several respects, viz: (a) It holds defendants for fraud, because of the Berger sale, notwithstanding, on defendants' theory it was made on behalf of Davis and Elsberry after they had purchased from plaintiff. The instruction ignores all this. (b) It holds defendants for fraud on the bare representation of Davis, that Huckstep could not sell for $3500 without requiring the jury to find that Palmer was induced thereby to sell for $3000, and without requiring the jury to further find that Palmer had not in fact previously agreed to sell to Elsberry and Davis for $3000. Jobes v. Wilson, 140 Mo. App. 281, 289; Montgomery v. Hundley, 205 Mo. 138; Hallewell Cement Co. v. Stewart, 103 Mo. App. 182; Bank v. Byers, 139 Mo. 652. (3) Plaintiff's second instruction is obnoxious to the same criticism. It entirely ignores the defendants' theory which is supported by all the credible evidence in the case, to the effect that plaintiff contracted the land to Davis on the first trip and that the subsequent sale to Berger was made in behalf of Davis and Elsberry. It

also fails to require the jury to find that Huckstep could then sell at $3500 on Palmer's account and that Palmer was free to refuse to sell to Davis and would have refused but for the representation of Davis that Huckstep could not sell for $3500. Both of these instructions purport to cover the whole case and authorize a verdict on the premises contained in them. This was error and is not cured or curable in the case. Ghio v. Mercantile Co., 180 Mo. App. 686, 700-702; Sheperd v. Transit Co., 189 Mo. 373. (4) The court erred in admitting Palmer's statements as to what Davis told him that Huckstep said to Davis. It was rank hearsay. No conspiracy was shown and no authority from Huckstep to Davis to talk for him. A common design to defraud can't be proven by the declarations of a supposed conspirator. 1 Greenleaf, Ev., 111; State v. Kennedy, 177 Mo. 131; State v. Ross, 29 Mo. 51. (5) The court likewise erred in admitting Huckstep's declarations as detailed by Palmer relating to transactions occurring prior to the sale to Davis. (6) On the whole case the purchase by Davis from Palmer was a perfectly legitimate transaction conducted by Palmer himself. The subsequent sale to Berger in no way changed the situation or warranted any inference of fraud or unfairness. The instructions given for plaintiff invited the jury to guess that the transaction was fraudulent, by assuming contrary to the evidence of Davis, Huckstep and Elsberry that Huckstep shifted the Berger sale as part of a conspiracy to defraud Palmer.

*Creech & Penn* and *Pearson & Pearson* for respondent.

BECKER, J.—This is an action for fraud and deceit alleged to have been committed by defendants, by which plaintiff was induced to sell a farm for $3000 when he would have otherwise received $3500. From a judgment in the sum of $500, in favor of plaintiff and against both of the defendants, the defendants appeal.

On the trial of the cause the testimony tended to show that A. W. Palmer, plaintiff below, respondent

here, owned a farm in Lincoln county, Missouri, which he listed for sale for a period of sixty days from March 30, 1914, with the defendant Charles S. Huckstep, a real estate agent, the farm to be sold at a price to net said Palmer $3500. Huckstep advertised the place in the newspapers and otherwise and had personal interviews with prospective purchasers.

It appears that the defendant, Thomas Davis, together with one D. E. Elsberry, had, prior to the time of the listing of the property with defendant Huckstep, attempted to purchase the said farm from Palmer, and had offered $2700 therefor, which offer was refused. Then Davis and Elsberry rented the farm from Palmer for one year.

Palmer's testimony was to the effect that after he had listed the property with Huckstep for sale, defendant Davis called on him at his home in the city of St. Louis, about the last of April, 1914, for the purpose of buying a telephone outfit which the plaintiff had on his farm. In the conversation they discussed the question of plaintiff selling the farm; that plaintiff told Davis that Huckstep had the farm in his hands with authority to sell it at $3500 net to plaintiff; that Davis then told plaintiff that Huckstep could not get that amount for the farm and offered him $3000 on behalf of himself and the said Elsberry. Plaintiff testified that he told Davis that if he heard from Mr. Huckstep to the effect that he could not get $3500 he would take $3000.

Plaintiff further testified that on May 14, the said defendant Davis again called on him at his home in St. Louis and told him that Huckstep had sent him to tell him that he could not get $3500 for the farm and showed the plaintiff a receipt signed by Huckstep, which read as follows:

"May 12, 1914.

Received from B. D. Elsberry and Thomas Davis $500 earnest money on sale of A. W. Palmer farm.

CHAS. S. HUCKSTEP."

That Davis had with him a deed partially made out which he stated had been prepared by Huckstep, in which

it was merely necessary to insert the plaintiff's name and that of his wife and the description of the property. Plaintiff further testified that believing Huckstep was not able to get the $3500, and that $500 had been deposited, as shown by the receipt, he went with the defendant before a notary and had the deed properly filled out and executed. This occurred on the 14th day of May, 1914. It was agreed between the parties that Huckstep's commission was to be taken care of by Davis and Elsberry. Davis then took the deed and promised to send the balance of the money.

The plaintiff testified that thereafter in the month of June he made a trip to Elsberry, Missouri, where the defendants lived, and while visiting there learned that Huckstep and Davis had sold his farm to one Joe Berger for the sum of $3750 before he had made his deed to the farm to Davis; that when he inquired of the defendant Huckstep regarding this sale, he was given no satisfaction. He thereupon filed this suit.

For plaintiff, witness A. F. Gray testified that he was a brother-in-law of one Joe Berger who purchased the farm formerly owned by Palmer, the plaintiff, and that the witness had acted as Berger's agent in said transaction. He testified that he noticed Huckstep had the Palmer farm for sale, and along in the month of April, 1914, had called at Huckstep's office and was told by Huckstep that the price of the farm was $3750; he then had made an offer of $3250 for the place, which offer was refused; but that on the 12th day of May, 1914, a Mr. Robinson came out to see him, representing Huckstep, and offered him the Palmer farm for $3600 if he would make the deal right away, and that, at witness Gray's request, Robinson gave him until the following day at noon to make up his mind on the proposition. Gray thereupon communicated with Berger and told him that if he wanted to buy the Palmer farm he would have to do so at once; that he could make the deal for $3750. Berger agreed to purchase the farm at that price, and being unable to leave his home because of illness, Berger sent his wife over to Gray's home the following morning

with a check for $500 to be used by him as earnest money in the purchase of the farm. Berger's check for $500 was read in evidence, and is as follows:

"Elsberry, Mo., May 12, 1914.
ELSBERRY BANKING COMPANY
Pay to    Huckstep and Co.,    Or Order,    $500.00
Five Hundred ........ & ........ No. 100 Dollars
(Signed) JOE BERGER.
Endorsed: HUCKSTEP REALTY CO.
Paid May 13, 1914. ELSBERRY BANKING COMPANY, Elsberry, Mo."

Gray delivered the Berger check to Huckstep and at the time entered into a written contract for the purchase of the Palmer farm. The first paragraph of said contract reads as follows:

"This agreement made and entered into this 13th day of May, 1914, by and between A. W. Palmer, by Chas. S. Huckstep, agent, party of the first part of St. Louis and Elsberry, State of Mo., and Joe Berger, party of the second part, of Lincoln county, State of Mo." The contract bears signatures as follows: "A. W. Palmer, by Chas. S. Huckstep, (party of the first part)—A. F. Gray, Agent, (party of the second part)."

This said agreement shows the consideration for the Palmer farm to be $3750. Gray testified that, while Huckstep had made him a price of $3600, he had in point of fact quoted the price to Berger as $3750 in order to have a commission of $150 for himself in handling the deal.

Joe Berger testified for plaintiff that Gray had acted as his agent in purchasing the farm from Huckstep; that he had paid $3750 therefor and that the contract was mailed to him; that a short time after he had received the contract he asked Huckstep to draw up the deed, but that Huckstep said he would do so as soon as he got the title and other things settled. He finally got his deed about May 20th, at which time he gave Huckstep the balance of the purchase price; that he did not know he was purchasing the farm from Davis until he received his deed from Huckstep, at which time he re-

quired Huckstep to read it over to him a second time by reason of the fact that Davis' name appeared in it, and that Huckstep then explained the matter to him.

The testimony on behalf of the defendants was to the effect that Davis and Elsberry desiring to purchase the Palmer farm and being told by Huckstep that it was still undisposed of, they determined to try to purchase the farm direct from Palmer for the sum of $3000; that Davis accordingly arranged to go to St. Louis and see Palmer.

Defendant Davis testified that during his first conference with Palmer about the last of April, Palmer seemed very anxious to sell the farm at $3000. Davis testified as follows:

"I told him if he would knock off $60 that he owed him for rent that I would try to buy it if he would give me ten days to fix it up and he said that it would be all right, but he wanted $20 for the phone. I said, well, that is all right, I will do that and buy the place and you knock off $60 and he remarked, himself; 'you attend to Huckstep, yourself,' and I said: 'Yes, sir, we will do that.' "

Davis testified that when he returned home he had a conference with Elsberry, who later made arrangements with Huckstep to draw up the papers; that Elsberry gave Huckstep a check in the sum of $500 on the 12th of May, 1914, as a part payment on the farm; that after the papers were complete, he, Davis, took them to St. Louis and had Palmer and his wife sign and acknowledge the deed, after which he again took the deed to Elsberry, who in turn delivered it to Huckstep for recording. He denied that Huckstep had sent him to Palmer or that he told Palmer that he had. He further testified that Huckstep did not pay his expenses to St. Louis on his first trip; that however Huckstep did stand a portion of the expenses of his second trip to St. Louis at the time he got Palmer to sign the deed. Further, that he could not say whether it was the day before or the day on which he went to St. Louis, "that we were talking about the Berger contract." He further testified that the property was sold to Berger and as his part of the profits on

the deal he received $180, $80 of which was in cash and the balance credited by Elsberry on an account that he owed him.

Defendant Huckstep testified that he had been given the Palmer farm to sell at a price to net Palmer $3500; that he advertised the land and tried to sell it. He did not remember exactly when Davis came into the transaction; that, however, Davis reported to him that he had bought the farm; that Elsberry had told him the price; that he was not aware of Davis having gone to St. Louis the first time, and that he had not sent Davis and had not told him to tell Palmer he was unable to sell the farm for $3500; that after Davis had reported that he and Elsberry had purchased the farm, he, Huckstep, had told Elsberry, in answer to his inquiry, that he could probably get $3400 for the farm on a sale, but Elsberry refused to sell the property at said price; that several days thereafter, however, Elsberry came in to him and left a check for the sum of $500, asking him to fix up a deed from Palmer to Davis and wife, so that Davis could go to St. Louis to have it signed; that he made out the receipt and properly filled in the deed; that at that time he, Huckstep, again broached the subject of selling the farm for Davis and Elsberry which resulted in Elsberry stating that if he could get $3600 for the farm he would sell it. That same day witness sent Robinson out to see Gray, and Robinson insisted upon having Gray come in the following day, when the contract of May 13 was entered into, for the purchase of the Palmer farm for the sum of $3750 by Berger; that the day after he had entered into the agreement to sell the property to Berger, Davis came into his office and got the receipt which he, Huckstep, had made out to Davis and Elsberry, for the $500, on account, together with the deed, and took them to St Louis to obtain the Palmers' signatures to the deed. Witness further testified that he did not deposit the check that Elsberry had given him, in the sum of $500, but that he returned it to Elsberry after the deal with Berger was complete; that he himself received a commission of $150 on the sale to Berger; that he had executed the contract with Berger

in the name of Palmer for the reason that: "I just figured if anything came up and Davis and them could not come across with the deed they had contracted to do, I would have Mr. Berger under contract and the deal would go through just the same. . . . I did not notify Palmer of the sale on the 13th for the reason that he had already sold it for $3000. I did not contract in Davis' and Elsberry's name because I only had their say-so; they did not have any deed. I had Berger's and Elsberry's checks both at the same time. Did not see any need in cashing Elsberry's check. Never thought about anything coming up. Did not cash either of them until the 14th. I was dividing the money received from Mr. Berger. Did not have any of Elsberry's money or Davis' money." He testified further that Davis and Elsberry knew on the date that Davis came to St. Louis, that he had contracted for the sale of the Palmer farm to Berger at the price of $3600, less his commission of $100. He admitted paying part of the expenses of Davis' second trip to St. Louis, and that besides, out of the $250 he was supposed to get out of the two sales, he had paid to Mr. McDonald $50 for suggesting the name of Berger as a prospective buyer and that as a matter of fact his total net commissions amounted to a little over $190.

Elsberry testified that he and Davis, along in March, 1914, had offered $2700 for the Palmer farm, which was refused, and that they thereupon rented the place for one year at the price of $160. Later on when they heard there were negotiations under way for the sale of the property, he sent Davis to St. Louis to secure an option on it for a few days. Davis returned reporting he had bought the property for $3000 less $60 which they owed Palmer for rent, and he and Davis to take care of Huckstep's commission, that he went to Huckstep's office within a day or two thereafter and told him that he and Davis had purchased the farm; that Huckstep said he thought he could dispose of the farm for them for about $3400, but they declined to accept that amount. Several days later he went to Huckstep to have him prepare the deed, and gave Huckstep a check for $500,

a receipt for which, together with the deed, Huckstep gave to Davis to take to St. Louis and obtain the Palmers' signatures thereto; that Huckstep retained his check for $500 until after the deal with Berger was completed, when it was returned to him; that prior to Davis having come to St. Louis, he agreed with Huckstep that $150 commission would be paid by him on the deal. The witness testified:

"The way I happened to pay the $500, Davis said he had better take something else to show good faith in his trade and I says as long as Charlie has been attending to this business I will give Huckstep a check for $500 and you take Huckstep's receipt to show Pete (Palmer) we want to close the trade up."

The witness testified that he had told Huckstep as early as May 12th, that if he could resell the farm for $3600 to do so; that he had promised to give him $150 as a commission on the Palmer deal and $100 additional if Huckstep sold the farm for them to Berger.

At the close of plaintiff's case, as well as at the close of the entire case, the defendants each offered separate demurrers, each of which demurrers, the court overruled.

I. Appellants contend that the trial court erred in overruling the demurrers to the plaintiff's evidence and to all the evidence, and this on the ground that no fraud and deceit had been shown. This being an action at law for damages for fraud and deceit, it no longer requires a citation of authorities to support the rule of law so well expressed by Bigelow on Fraud, that: "A false representation of facts, made with a knowledge of its falsity, to persons ignorant thereof, with intention that it shall be acted upon, followed by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance."

When we come to examine the testimony adduced on behalf of the plaintiff, and viewing it in the light most favorable to plaintiff, there is but one conclusion which we can arrive at, and that is that the trial court prop-

erly overruled the defendants' demurrers at the close of plaintiff's case.

The record shows that during the time that the defendant, Huckstep, was acting as agent for Parmer for the sale of the farm, he contracted in writing for the sale of the farm to Berger at and for the sum of $3750. This contract was signed, A. W. Palmer, by Chas. S. Huckstep, and bore the date of May 13, 1914, while the deed from Palmer to Davis was acknowledged a day later. On the very day that said contract of sale to Berger was made, Huckstep gave a receipt to Elsberry or the defendant Davis, for $500, as having been paid him as earnest money on the sale of Parmer's farm, to be taken to St. Louis by defendant Davis, and shown to Palmer. Together with the said receipt for $500 Huckstep delivered to Davis a deed which he had previously prepared, in which the consideration was $3000. The record further shows that this $500 for which the receipt was given by Huckstep to Davis, consisted of a check for $500 which was never cashed by Huckstep but held by him until after the completion of the sale of the farm to Berger, when the check was returned to Elsberry.

It is clear that neither the defendant Davis, nor Elsberry, ever put up any cash whatsoever for the purchase of the farm, but it clearly appears that Davis went home with the deed and delivered it to Elsberry, who in turn delivered it to Huckstep, and they thereupon waited until Huckstep had completed the deal which he had prior thereto made with Berger, and out of the money that Huckstep collected from Berger on this contract which Huckstep had signed in the name of Palmer, Huckstep paid off the encumbrance on the land, also the taxes; paid for the abstract and sent Palmer the difference between the aggregate amount of the encumbrance and taxes and $3000, and the remaining $750 Huckstep then divided between several parties, including himself, Davis, Elsberry and Gray and some one or two others. Added to this we find the direct statement of the plaintiff, Palmer, that Davis at his first interview with him in St.

Louis, stated that Huckstep was unable to sell the farm for $3500, and that he had been sent to Palmer by Huckstep, and his repeated statements that he had stated to Davis that he would agree to sell only in the event that Huckstep was unable to sell the property for $3500. Plaintiff clearly adduced substantial evidence sufficient to make a *prima-facie* case for the jury.

II.   The appellants set out several assignments of error respecting certain instructions given by the trial court at the request of plaintiff.   When we come to examine defendants' motion for new trial, filed in the case below, we find among the thirteen distinct grounds upon which defendants rely, two that have reference to the instructions given in the case, which read as follows:

"Ninth: The court erred in refusing proper instructions asked by the defendants."

"Tenth: The court erred in granting improper instructions and declarations of law asked by the plaintiff."

While these assignments of error are indefinite and do not set out the specific grounds or reasons of the objection, in view of the Supreme Court's ruling in the case of Wampler v. Railroad, 190 S. W. 809, we do not hold them to be insufficient to authorize a review here of the instructions given for plaintiff and those offered by defendants and refused.   [See, also, Stid v. Mo. Pac. Ry. Co., 236 Mo. 382, 139 S. W. 172.]

We therefore next consider appellant's assignment of error touching plaintiff's instructions.   It is contended that instruction No. 1 is bad because it "holds defendants for fraud, because of the Berger sale, notwithstanding, on defendants' theory, it was made on behalf of Davis and Elsberry after they had purchased from plaintiff," and because, "it holds defendants for fraud on the bare representation of Davis that Huckstep could not sell for $3500, without requiring the jury to find that Palmer was induced thereby to sell for $3000, and without requiring the jury to further find that Palmer had not in fact previously agreed to sell to Elsberry and Davis for $3000."

There was no such theory presented by the pleadings. The answers of the defendants were general denials. The sole issue in the case was as to the truth of falsity of the allegations in plaintiff's petition, and this instruction correctly presents to the jury the theory of the case upon which it was tried.

As to the failure of the instruction to require the jury to find that Palmer was induced to sell his farm for $3000, by reason of the alleged fraudulent representations of Davis, this omission is not prejudicial to defendants as there is no testimony in the case which goes to controvert this fact that plaintiff did in point of fact rely upon and was induced by the representations of Davis to sell the farm for $3000.

What we have said above disposes of the objection levied at plaintiff's instruction No. 2.

III. The admission of plaintiff Palmer's statements as to what had been told him by defendant Huckstep is assigned as error on the ground that it was hearsay and that no conspiracy was shown and no authority from Huckstep to Davis to speak for him; that the admission of these statements was contrary to the rule of law, that a common design to defraud cannot be proven by the declarations of a supposed conspirator. This point must be ruled against the appellants, even upon the authorities of the cases cited by them. In the majority opinion in the case of State v. Kennedy, 177 Mo. 98, 1. c. 131, 75 S. W. 979, relied upon by appellants, we find the following:

"While the authorities all hold that, 'it is for the court, in the first place, to say whether there is any evidence of a conspiracy, and for the jury to determine whether there was one, and its objects' (State v. Walker, 98 Mo. 95, 9 S. W. 646; 11 S. W. 1133; State v. McGee, 81 Iowa, 17; 2 Thompson on Trials, sec. 2455), and the court so announced from the bench; . . . yet the trial court ignored this theory of the case in the instructions; in fact, did not say one word about a conspiracy but usurped the province of the jury in that regard, regardless of the law governing the case."

In the case of State v. Ross, 29 Mo. 1. c. 51, also cited by appellants, the court said:

"Such acts and declarations are sometimes admitted for the sake of convenience before sufficient proof is given of the conspiracy."

Fraud and conspiracy by their very nature are rarely proven by express agreement or compact between the conspirators or by contract expressed in writing, but are in the great majority of cases proven by circumstantial evidence. They are usually hatched in secret and therefore can seldom be shown by direct or positive testimony. This makes it peculiarly necessary to permit them to be established by proof of facts and circumstances tending to show their existence. [U. S. v. Goldberg, 7 Biss, 175; State v. Walker, 98 Mo. 104.]

Upon the testimony that Huckstep wrote the alleged receipt for $500 and partially prepared the deed from Palmer to Davis, and gave the said receipt and deed to Davis to take to St. Louis, and that part of the expense of this trip was paid by Huckstep, when taken in connection with the fact that there was at the time an outstanding contract for the sale of the property for the sum of $3750 signed by Huckstep in the name of Palmer, the court could very properly hold that sufficient testimony of a conspiracy had been shown to submit that question to the jury, and therefore the acts and declarations of the alleged conspirators in furtherance of its objects were competent. [Peoples v. McKane, 143 N. Y. 455; 1 Greenleaf on Evidence, section 111.] The trial court committed no error in admitting statements of the plaintiff complained of.

There are other points raised by the appellants which we have examined into, but do not find that they are of sufficient merit to be noted herein.

Upon a full consideration of the case we are of the opinion that the judgment is for the right party and that no substantial error was committed against the appellants, or either of them. The judgment is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.